Arthur L. LIVELY et al., Plaintiffs,

v.

Maurice J. CULLINANE et al., Defendants.

Civ. A. No. CA 75–0315.

United States District Court, District of Columbia.

May 9, 1978.

---

2. See, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed. 619 (1971).

See also, D.C., 451 F.Supp. 999.

Bruce D. Sokler, Covington & Burling, Washington, D. C., for plaintiff.

Robert L. Chernikoff, Asst. Corp. Counsel, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

BRYANT, Chief Judge.

Plaintiff and his class seek from this court an injunction and declaratory relief against the District of Columbia Police Department and Police Chief to prohibit them from detaining persons they arrest without presenting them promptly to a judicial officer. Plaintiff in his present motion for partial summary judgment has submitted data, in the form of stipulations, affidavits and depositions, which show that the pattern and practice of the Police Department is to detain persons before presenting them to a magistrate for a period of time which is unreasonable under Fourth Amendment standards. This court grants plaintiffs' motion for partial summary judgment as to count II of the complaint and as to count III directs defendants to provide the court with a detailed description of their present system of processing arrestees before presentment and a list of procedures to eliminate the problems which the court outlines as causing unconstitutional delay. The plaintiffs have also noted rules of thumb which might prove helpful in shaping a remedy in this case. The defendants might be wise to address themselves to these suggestions.

I. Plaintiff in this case is Arthur Lively, who was arrested around 3 a. m. on March 9, 1974, on charges of disorderly conduct. He alleges that he was detained at the police station until 5:30 a. m. while the police filled out forms. He alleges that he was not allowed to post bond or collateral nor was he taken quickly before a magistrate. He claims that he was given the chance to pay $10 for the police to forget the incident but Lively insisted that he wanted to go to trial and wanted to post bond. He was then fingerprinted and once more given the opportunity to post $10 which would be forfeited in exchange for

his release by police. He further alleges that his wrist was broken by a policeman pushing him and causing him to fall. Although the defendants refute most of these facts, except the time and date of arrest, this court finds it must rule for plaintiffs on this summary judgment motion on the grounds that it is a class action.

The certified class which Lively now represents is "those citizens who are arrested as that term is used in the Fourth Amendment of the Constitution and deprived of rights guaranteed them under the Constitution, for defendants' alleged failure to make prompt presentment regardless of the length of detention or arrest and regardless of whether the individual's name is ever entered on an arrest book." The parties' definition of the plaintiff class as all those whose Fourth Amendment rights have been violated is not a definite class since it becomes defined only upon declaration of this court that certain processing procedures of the police are unconstitutional. The court would prefer to define the class as "all those persons who have been arrested and detained by police for over one-and-a-half hours before presentment, who were not released within a short time after arrest on bond, citation or collateral, and who, therefore, are likely to have suffered unlawful and unconstitutional detention." If this definition of the class is used those persons within the class are readily identifiable. The court may, in its discretion, redefine and modify a class in a way which allows maintenance of the suit as a class action. *Dolgow v. Anderson,* 43 F.R.D. 472 (E.D.N.Y.1968), *rev'd* on other grounds, 438 F.2d 825 (2d Cir. 1970) *Thomas v. Clarke,* 54 F.R.D. 245 (D.Minn.1971). The court realizes that a police officer may take a greater length of time to process an arrestee than one-and-a-half hours and still be acting within constitutional bounds. However, the evidence submitted by plaintiffs, most of which comes from depositions taken of defendants' agents, show the average time to process an arrestee should nor-

mally take no longer than one-and-a-half hours. The Court accepts the description of the pattern and practice of the police department submitted by plaintiffs, since the defendants do not offer any opposing evidence. Therefore, even these individuals who require more than one-and-a-half hours to be processed may have a constitutional claim that they were not processed and presented as quickly as possible.

In general, the reasonableness of a particular search is determined "in light of the particular circumstances." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). Because this suit is a class action and because of the detailed evidence of usual police processing procedures which plaintiffs have introduced,[1] this Court feels it is able to judge whether the pattern and practice of the Department meets up to Fourth Amendment standards. In other words, it need not examine the particular circumstances of detention before presentment on a case-by-case basis. The remedy the court orders will be the minimum constitutional standard the Department must uphold. Of course, even meeting this standard in certain cases will not ensure that the police have not unconstitutionally detained an arrestee before presentment. However, it will give the Department certain rules of thumb by which it can operate within constitutional bounds.

The plaintiff class has moved for partial summary judgment. The defendants have opposed this motion on the grounds that whatever the delay between arrest and presentment it is reasonable and therefore constitutional. Defendants contend that the number of different community service and law enforcement tasks they must carry out demonstrates that the delay between arrests and presentment is reasonable. They argue that those cases which speak of the right to a prompt presentment are concerned primarily with prejudice inuring to the defendant because he is coerced to give testimonial evidence against himself during a long delay before presentment. Here the

---

1. The plaintiffs have collected data on the time it took the police to process individuals arrest- ed during different time periods for the four weeks from March 27, 1977 to April 23, 1977.

plaintiffs do not allege, nor do they prove, such prejudice.

Defendants further add that the time to process each arrestee differs according to the crime for which he has been arrested. So wide variances in processing times are understandable. The defendants argue also that other agents of the United States are responsible for part of the delay before presentment, and no remedy can be ordered by the court if a constitutional violation is found, unless these other parties are joined.

The court finds all defendants' arguments unconvincing and that they have fundamentally misconstrued the "reasonableness" requirement of the Fourth Amendment.

██ II. The standard by which the court is to judge whether the defendants' processing procedures before presentment pass constitutional muster is whether they lead to the detainment of the arrestee only so long as needed to complete "the administrative steps incident to arrest." *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975). After that short period of time the core guarantee of the Fourth Amendment moves into the foreground— the individual arrested and held by police must be brought before a judicial officer who determines if probable cause exists to believe that a crime has been committed by the person detained. As the Supreme Court in *United States v. United States District Court,* 407 U.S. 297, 316, 92 S.Ct. 2125, 2136, 32 L.Ed.2d 752 (1972) pointed out, the "very heart of the Fourth Amendment directive" is that a search or seizure necessarily involves "the judgment of the magistrate that the collected evidence is sufficient to justify invasion of a citizen's private premises or conversation."

██ The essential reason the detached judgment of a judicial officer is needed to detain an individual beyond the critical "stop and frisk" or processing steps after arrest is that a judicial officer belongs to a branch of the government different than the police who are charged with investigating crime. "The point of the Fourth Amendment . . . consists in requiring that . . . inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).

This judicial judgment can be delayed only for the time necessary for the police to process an individual arrested and detained. At the point at which these administrative steps are completed (or should have been completed) the Fourth Amendment operates to force the police to present the arrestee before a magistrate.

The Court in *Terry v. Ohio, supra,* clearly said that "[t]he scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or a seizure in light of the particular circumstances." *Id.* 392 U.S. at 21, 88 S.Ct. at 1880.

The issue in this case is how long may the police detain an arrestee before presenting him or her before a magistrate? The Supreme Court, in exercising its supervisory powers over the administration of criminal justice in the federal courts as early as 1943 established in *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), that the police must present a person "with reasonable promptness." *Id.* at 344, 63 S.Ct. 608. Arraignment of a detained individual needs to be held "without unnecessary delay" the court repeated in 1957, on the basis of the then new Rule 5(a) of the Federal Rules of Criminal Procedure. *Mallory v. United States,* 354 U.S. 449, 452, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). In both cases the court held that the confessions extracted by police officers during the extended period defendants were detained prior to presentment could not be admitted at trial. The whole purpose of Rule 5(a) is to protect individual rights without hampering law enforcement. *Id.* at 453, 77 S.Ct. 1356.

■ The United States Court of Appeals for the District of Columbia has emphasized that the right to a prompt presentment is a fundamental constitutional right. *Brown v. Fauntleroy,* 143 U.S.App.D.C. 116, 117, 442 F.2d 838, 839 n.2 (1971); *In re Barnard,* 147 U.S.App.D.C. 302, 306, 455 F.2d 1370, 1374 (1971), rooted in the Fourth and Fifth Amendments. *Cooley v. Stone,* 134 U.S. App.D.C. 317, 318, 414 F.2d 1213, 1214 (1969). Most recently the Supreme Court has emphasized how heavily the balance of interests weighs in favor of the individual during this pre-presentment detention period. In *Gerstein v. Pugh, supra,* the court explained its holding that an individual could be detained before trial only upon a finding of probable cause by a neutral magistrate.[2] A prosecutor's information was not sufficient:

> Once the subject is in custody . . . the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. . . . When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. *Id.* 420 U.S. at 114, 95 S.Ct. at 863.

The balance weighs so heavily in favor of the individual that the police can justify each delay before presentment only by a strong showing that it is necessitated by a substantial administrative need.

Plaintiffs argue that defendants need to show that police procedures are the least restrictive means by which to process arrested individuals during this pre-arraignment period. *Shelton v. Tucker,* 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). This court believes that the balance described in *Gerstein v. Pugh, supra,* creates a high standard of "reasonableness" much akin to the one plaintiffs urge. It is clear that defendants cannot meet either, and, therefore, the plaintiffs deserve the relief they seek—declaratory and injunctive relief against defendants' pattern and practice of presenting arrested individuals to the magistrate only after a substantial delay, not necessitated by any administrative or safety need of the Police Department.

■ The Police Department has argued that the delay in presenting arrestees is "reasonable" when one considers the other administrative and enforcement matters the police must handle each day. What defendants have failed to consider are the important liberty interests of the individual at stake in any pre-presentment detention. The individual is restricted in his physical movement and his ability to go to work or carry on his life. His reputation may be impugned even during a short detention. The interests of the police are not as significant during this post-arrest detention period. True, they must keep accurate records so that facts about the arrest and the alleged crime are preserved for the prosecuting attorney. The police also have an interest in keeping internal records. Without doubt they have an important interest in searching an individual so as to assure themselves he will not harm them. They also may restrict his movement so that he cannot destroy evidence. However, as soon as they fulfill these needs in an efficient way they cannot detain an individual any longer. At the point the police department finishes these administrative tasks, the Fourth Amendment intervenes so that they

**2.** The court noted that an indictment returned by a properly constituted grand jury conclusively determines the existence of probable cause and is a sufficient substitute for the prob-

able cause determination of a neutral, detached magistrate. *Id.* 420 U.S. at 117, n.19, 95 S.Ct. 854.

are holding an individual unconstitutionally until he is presented to a magistrate.

■ III. The basic aspects of the police processing procedures which delay the presentment of arrested individuals for an unreasonable period of time include the following:

(1) The police fill out a number of police forms which call for information easily collected from the original arrest report. Form 255, Final Disposition Report (R84), Property Form (PD 81), Narcotic Form, Radio Run Card 258, Forcible Entry Report and other reports may be filled out from the arrest book. The Event Report (PD 251) can be filled out without the arrestee if the police officer has witnessed the crime. Deposition of James R. Lee, May 26, 1976 at 15. If the officer did not observe the events in question he could question the witnesses or complainant, who, Officer Lee admits, may be more reliable sources. Although police officers are told during the Academy training program that the arrestee need not be present when they fill out these forms, they are not instructed as to how certain forms (such as Form 251) fit into the police processing or court system. Deposition of Christian G. Gilbertson, Jr., June 28, 1976, at 16. Therefore officers might not understand what forms must be filled out before presentment and which can be completed later. Trainees are not taught that they may draw on information from other forms instead of re-interviewing the arrestee. Gilbertson Dep. at 17. In fact, they are given no instruction on many forms, including PD 63, PD 9, narcotic form, PD 21, PD 778, R–84, PD 145, and PD 249.

(2) The police procedures for fingerprinting and photographing a large number of arrestees are inefficient, and do not necessarily serve a governmental interest which would not be served just as well if the individual were put through this processing after presentment. The police department has not given any explanation of why it subjects those arrested for certain crimes to fingerprinting and photographing and not others. Not only are those arrested for felonies fingerprinted and photographed, but also so are those detained on charges of disorderly conduct without proper identification; operation of a motor vehicle in disregard of a restriction imposed; and operating without a District of Columbia driving permit when one is required. In addition, the department does not explain why some categories of arrestees are processed at the Identification Annex near the Central Cell Block and others at the district station nearest their arrest; nor do they explain why misdemeanants who are not required to be fingerprinted are transported directly to the Central Cell Block. It seems likely that those arrestees who must be taken first to the district station arrive for presentment somewhat later than those processed near the Central Cell Block. District of Columbia Metropolitan Police Department General Order 502.1, Parts IC1, IC2, ID1, ID4, ID5.

The Police Department has said that an arrestee must be fingerprinted so that if he gives a false name (1) the police may quickly determine his correct name for police and court records; and (2) the arrestee may be charged and arraigned for any crime noted on outstanding warrants, at the same time he is presented for the crimes for which he is being held presently. Lee Dep. at 31. About one in every ten offenders who is processed through fingerprinting and photographing has used a name different than his own, according to Officer Edward Dion. The correct names of these persons would still emerge if fingerprinting and photographing were carried out after presentment. In any case, the police department must make a stronger case for this step as a necessary administrative procedure prior to presentment if it is to stand.

(3) Back-ups for fingerprinting processing can cause delays of up to three hours. The police department has not shown that it allocates its officers so as to assign more officers to process individuals brought in during the busiest parts of the day. Lee estimated that if six arrestees were backed up at the Central Cell Block, the last person in line might have to wait two to three

hours to finish processing. By contrast, Dion estimated that if four police officers were working on identification processing, an arrestee should be through in fifteen minutes. He estimated that if ten persons were lined up to be processed at the Identification Annex, and seven were repeaters (with prior fingerprint records) the last person in line might have a wait of one and one-half hours. Deposition of Edward J. Dion, July 14, 1976, at 18–19. The officers in the fingerprinting section do not process individuals on the basis of the time they were arrested but rather by the order in which the arrestee's paperwork reaches the officer's desk. In fact, Dion admits that at no point in this fingerprinting and photographing processing is any priority put on the time of the individual's arrest.

The flow of arrestees through the fingerprinting/photographing processing is predictable according to Dion. In an average day about ninety persons will be processed with the busiest period the four hours between 5 a. m. and 9 a. m. (fifteen to twenty arrestees). About eight to fourteen persons are processed from 9 a. m. to 5 p. m. and from fifty to seventy from 5 p. m. to 5 a. m., according to Dion. The police can predict that business will peak around 5 a. m. and around 9 a. m. Still, the Department only assigns one team of officers to conduct fingerprinting processing during this four hour period. Another peak period occurs when the court shuts down. At this time a back-up of from four to fifteen persons could be expected. (The police also know from experience on which nights of the week they will have to process a greater number of arrestees.) Dion Dep. at 14–15.

(4) The police department has not shown that it assigns a greater number of officers to those times of the day or time shifts in which it is busier with criminal arrests and/or with community service calls.

(5) The Department forces certain arrestees to appear in a line-up so that detectives may have an "overview for the police officers to be aware of the different crime patterns in the city." Lee Dep. at 10. Witnesses are not brought in to identify arrestees and seemingly this 7 a. m. morning line-up is simply to give detectives information they could just as readily glean from arrest and investigation reports. The line-up itself takes from thirty to forty-five minutes and any person to whom a detective wishes to speak may be detained an additional one-half to full hour. In fact, Police General Order 502 on Processing Prisoners and Centralization of Prisoner Confinement gives no directions as to the line-up, or length of time it may take. Lee Dep. at 9–10.

The court sees no justification for the police detaining individuals for this type of a line-up when the police officers could derive the same information from individual police reports or a summary report. Clearly, this type of line-up is not an administrative step necessary for police record-keeping and so is unconstitutional.

(6) Police trainees are given no guidelines as to how long they should take to process individuals. Furthermore, speed is not emphasized during training or in practice. General Order 502.1 mentions arraignment in court only as a secondary reason why detention of all prisoners is centralized as soon as possible after arrest. (In fact the department emphasizes the arrestees' availability for line-up as the first reason for centralization.) Part IA2.

An officer is not given any information during training about how long he should take in filling out the basic police forms, although he is told that he should call for patrol relief if he takes longer than thirty minutes. The goal of the training is to instruct the officer how to put down the necessary information in a coherent form, and is not to teach him the skill of processing an arrested individual within a short period of time. Lab exercises are not timed during training. At no time during the skills lab will an officer be encouraged to complete these forms quickly. Gilbertson Dep. at 26, 46.

Police regulations do not establish guidelines for the amount of time an officer should spend on the various steps of processing an arrestee. As evidenced when the

plaintiff class asked defendants for certain information in discovery, the defendants have never systematically studied how much time is spent in processing arrestees before presentment.

(7) The defendants seem to have a fairly efficient transportation system to take arrestees to the Central Cell Block for presentment. However, the court is uncertain how the defendants coordinate their processing efforts with the hours the courts are open for presentment. During the remedy stage of this case the defendants will have to demonstrate that their processing system efficiently utilizes the court time available for presentment of arrestees.

■ (8) Of course, individuals who are released on citation, bond or forfeitable collateral need never be presented before the magistrate. However, unless these alternatives are available promptly to those arrestees detained for processing, they too are detained in violation of their Fourth Amendment rights. Plaintiffs have shown that the times for which individuals are held before release on citation, collateral, or bond vary erratically. This alone causes the court to question whether or not those detained for the longest periods of time are held longer than is necessary for efficient processing purposes. The average time an arrestee is detained before release on citation is 128 minutes; before release on bond, 61 minutes; and before release on forfeitable collateral only 47 minutes. The differences between these three categories is unexplained by defendants. Even more serious is the statistic that a full 22 per cent of those arrested between 3 p. m. to 6 p. m. are released on citation only after being detained for over three hours.

(9) Most convincing is the evidence plaintiffs have gathered for a sample month on how long processing arrestees takes during different periods of the day. These average and median times vary radically and are not explained by defendants by either the larger number of arrestees during certain periods, nor by the heavier workload of the Department during certain shifts. In fact, the Department does not attempt to explain these variances in any way at all, but merely relates to the court that the police are very busy people.

Of those arrestees eventually presented to the magistrate those presented on the same day as their arrest included only 25 per cent for the 9 a. m. to noon period; 3.1 per cent for the noon to 3 p. m. period; and none for the 3 p. m. to 6 p. m. period, during the sample month. (Even of those arrested from midnight to 6 a. m., only 69.3 per cent were presented the same day as their arrest.) The median time to process persons arrested varied from 70 minutes (6 a. m. to 9 a. m.) to 110 minutes (9 a. m. to noon) to 116 minutes (3 p. m. to 6 p. m.). Of those arrestees later presented to a judicial official the median time for processing varied from 143 minutes (6 a. m. to 9 a. m.) to 250 minutes (9 a. m. to noon). Inexplicably those persons arrested during the 6 a. m. to 9 a. m. period are processed the most quickly even though the defendants claim this is the busiest part of their day.

The police take more than three hours to process only 28 per cent of those arrestees brought in between 6 a. m. to 9 a. m. However, processed in over three hours were 65 per cent of those arrested between 9 a. m. to noon; 59 per cent of those arrested during the noon to 3 p. m. period; and 57 per cent of arrestees during the 3 p. m. to 6 p. m. period.

As the plaintiff class emphasizes, these wild variations become especially striking when one realizes that a full 14 per cent of these persons eventually presented to a magistrate have all charges against them dropped at the time of presentment. The plaintiffs estimate that the average time these arrestees are detained prior to presentment is 20 hours, 19 minutes.

Those police officers familiar with processing have estimated that a full processing (including fingerprinting) should normally take about an hour. Six hours would be an abnormally long time to spend processing an individual. Four hours would be more than usual. Lee Dep. at 45–47.

Yet the figures collected by plaintiffs for a sample month show that defendants took over six hours to process 39.8 per cent of all arrestees. In fact, a full 50 per cent of those individuals eventually presented to judicial officers were not presented the day of their arrest (if arrested between midnight and 6 p. m.) or the next day (if arrested between 6 p. m. and midnight).

Figures such as these speak eloquently to the fact that the District of Columbia Police Department is detaining arrestees for no substantial administrative or safety reasons. Instead the Department has simply not taken seriously the urgency of the Fourth Amendment command that an arrested individual be brought promptly before a magistrate for a determination of probable cause.

Because of the lack of input by the Police Department during the early stages of this lawsuit, the court will order the defendants to submit a proposed order which would change the present police processing procedures so as to remedy the long, unnecessary and unconstitutional delays the court has found layered throughout the detention period prior to presentment. The defendants would be well advised to submit more evidence on the actual operation of the Police Department (e. g. how many officers are assigned to each shift; to what tasks are officers assigned; what types of police business occupies each shift). The court asks the plaintiff class, too, to submit an order which would remedy the deficiencies this class has so well documented. The court finds acceptable plaintiffs' suggestion that further discovery be allowed the parties during this remedy stage of the litigation.

The court vacates its order of March 4, 1976 which certifies a plaintiff class and orders a new plaintiff class be certified to be defined as "all those persons who have been arrested and detained by police for over one-and-a-half hours before presentment, who were not released within a short time after arrest on bond, citation or collateral, and who, therefore, are likely to have suffered unlawful and unconstitutional detention."

The proposed orders should be submitted by both parties no later than June 30, 1978.

SO ORDERED.