879 F.2d 607
 58 USLW 2071
 Charles K. KANEKOA; Warren E. Kanekoa, Plaintiffs-Appellants,
v.
CITY AND COUNTY OF HONOLULU; Douglas G. Gibb, Defendants-Appellees,
and
State of Hawaii, Defendant/Intervenor-Appellee.
Damien MELEMAI, Plaintiff-Appellant,
v.
CITY AND COUNTY OF HONOLULU; Douglas G. Gibb, Defendants-Appellees.
 Nos. 87-2636, 87-2844.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 9, 1988.
Decided June 29, 1989.
 
 Eric A. Seitz, Lowenthal, August, Graham & Seitz, Honolulu, Haw., for plaintiffs-appellants.
 Michael Dorn, Deputy Corp. Counsel, City and County of Honolulu, Honolulu, Haw., for defendants-appellees.
 Steven S. Michaels, Deputy Atty. Gen., State of Haw., for defendant/intervenor-appellee.
 Appeal from the United States District Court for the District of Hawaii.
 Before WALLACE, TANG and NELSON, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 In this consolidated appeal, Charles Kanekoa, Warren Kanekoa (the Kanekoas), and Damien Melemai challenge the judgments in their actions under 42 U.S.C. Sec. 1983 against the city and county of Honolulu (Honolulu) for violating their fourth amendment rights to a prompt probable cause hearing. The Kanekoas and Melemai contend that the determinations of no constitutional violation were erroneous as a matter of law. The Kanekoas further argue that the district judge erred in (1) instructing the jury, (2) admitting evidence of the circumstances surrounding their arrests, and (3) refusing to ask prospective jurors requested voir dire questions. The district court had jurisdiction pursuant to 28 U.S.C. Sec. 1343. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 
 2
 * Early in the morning of August 1, 1984, two women complained to Honolulu police officer Sanderson that two men driving a green car were impersonating police officers. The women had recorded the license plate number of the car. While Officer Sanderson was acquiring further information from the women, he was alerted to an assault in progress at a nearby intersection. When Officer Sanderson arrived at the scene of the assault, he observed two men standing next to a green car which had the same license plate number given by the two women moments earlier. He also saw a third male lying on the sidewalk wincing in pain. Officer Sanderson arrested the two men. Warren Kanekoa was arrested on charges of impersonating a police officer, disorderly conduct, and assault; Charles Kanekoa was arrested on charges of impersonating a police officer and disorderly conduct. The Kanekoas do not contest that the police had probable cause to arrest them. Officer Sanderson took the Kanekoas to the police station, arriving at 4:47 a.m.
 
 
 3
 At the station, the Kanekoas' property was inventoried, and they were fingerprinted, photographed, and given intoxilyzer tests. Warren and Charles Kanekoa registered blood alcohol levels of 0.14 and 0.08, respectively. The intoxilyzer reports were completed at 5:30 a.m. and approved at 7:00 a.m. Officer Sanderson's report was completed at 8:30 a.m.
 
 
 4
 If the Kanekoas had not been intoxicated, they would have been interviewed by the police. Honolulu Police Department rules prohibit the police from interviewing suspects having a blood alcohol level greater than 0.05. Therefore, the Kanekoas were placed in custody until sober enough to be interviewed. During this time, the police continued to investigate the case. Detectives reviewed the Kanekoas' criminal history reports and attempted to interview victims and witnesses.
 
 
 5
 At 11:33 a.m., the police interviewed Warren Kanekoa. The interview lasted approximately 15 minutes, followed by an off-the-record discussion lasting about one hour. The police interviewed Charles Kanekoa at 1:17 p.m. The interview lasted approximately 15 minutes, followed by an off-the-record discussion lasting about 45 minutes. In both instances, the off-the-record discussion concerned the suspects' father, who was a member of the Honolulu police department.
 
 
 6
 The Kanekoas were released at about 2:40 p.m. and all charges were dropped. If the police had decided to pursue the case, the Kanekoas would have been taken before a neutral magistrate for a probable cause hearing.
 
 
 7
 Melemai was arrested on May 21, 1985, on charges of burglary. He was identified at the scene of the burglary by a witness. Melemai does not contest that the police had probable cause to arrest him. Melemai arrived at the police station at approximately 5:40 p.m. Pursuant to the same procedures used in the Kanekoas' arrests, Melemai was given an intoxilyzer test. The test result was available at 8:00 p.m. and indicated a blood alcohol level of 0.14. Like the Kanekoas, Melemai was not interviewed immediately, but placed in custody until sober. In the interim, detectives continued to gather evidence, interview witnesses, and inspect the scene of the crime. The detective in charge of the investigation believed that a late-night or early-morning interview with Melemai would be inappropriate, and thus delayed the interview until morning. On the following day, the police interviewed Melemai from 11:15 a.m. to 12:30 p.m. Melemai was released at 1:30 p.m. and all charges were dropped. As with the Kanekoas, if the police had decided to pursue Melemai's case, he would have been taken before a neutral magistrate for a probable cause hearing.
 
 
 8
 In a consolidated pretrial hearing, the district judge held that Honolulu was not entitled to qualified immunity as a defense to the actions. The judge found that Honolulu had maintained an official policy of violating suspects' fourth amendment right to a prompt probable cause hearing. The judge refused to find Honolulu liable, however, reasoning that a fact finder must determine whether the police applied this practice to the Kanekoas and Melemai. On this factual issue, a jury found against the Kanekoas and a judge found against Melemai.
 
 II
 
 9
 The Kanekoas and Melemai argue that their detentions violated the fourth amendment as a matter of law under Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (Gerstein ). We review this question independently. See United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc) (McConney ), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 10
 In Gerstein, the Supreme Court held that the fourth amendment requires a judicial determination of probable cause as a "condition for any significant pretrial restraint of liberty." 420 U.S. at 125, 95 S.Ct. at 868. As the Court explained,
 
 
 11
 a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of a crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships.... When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty.
 
 
 12
 Id. at 113-14, 95 S.Ct. at 863 (emphasis added). A suspect arrested without a warrant, therefore, must be afforded a probable cause hearing before a neutral and detached magistrate "promptly after arrest." Id. at 125, 95 S.Ct. at 868. The Kanekoas and Melemai argue that their detentions of nine hours and nineteen hours respectively were not "brief period[s] of detention" and therefore constituted a per se violation of Gerstein.
 
 
 13
 The Supreme Court has not established a specific time period in which a suspect must be afforded a probable cause hearing. See id. at 123-25, 95 S.Ct. at 867-69; Schall v. Martin, 467 U.S. 253, 275, 104 S.Ct. 2403, 2415, 81 L.Ed.2d 207 (1984). We have rejected any per se rules and have held that the time period required by the fourth amendment depends on the circumstances of each case. See Bernard v. City of Palo Alto, 699 F.2d 1023, 1025 (9th Cir.1983). We have observed that "[d]etention for less than 24 hours without a probable cause hearing would violate the Constitution in a particular case if the circumstances were such that the administrative steps leading to a magistrate's determination reasonably could have been completed in less than 24 hours." Id. Thus, whether the detention of the Kanekoas and Melemai violated the fourth amendment depends on the circumstances of their detention. Their request for a per se rule of unconstitutional delay is rejected.
 
 
 14
 The Kanekoas and Melemai next argue that under the circumstances their detention was unreasonable. They suggest that any delay beyond the period required for minimum booking procedures presumptively violates the fourth amendment. Although their booking procedures were completed within an hour after arrival at the police station, they remained in custody so that the police could interview them. They assert that Honolulu's procedure of interviewing suspects prior to a probable cause hearing is not one of the "administrative steps incident to arrest" which justifies detention under Gerstein. Until now, our circuit has not been called upon to decide this issue.
 
 
 15
 Gerstein itself does not specify what constitutes "administrative steps incident to arrest." We believe, however, that this very phrase suggests a somewhat flexible approach to what qualifies as an administrative step. Significantly, the Court did not speak of administrative steps necessary to an arrest, but rather of those "incident to" an arrest. For this reason, we disagree with Lively v. Cullinane, 451 F.Supp. 1000 (D.D.C.1978), which requires police to justify a delay in presentment "by a strong showing that it is necessitated by a substantial administrative need." Id. at 1005 (emphasis added). We believe that the Court employed the phrase "incident to" in Gerstein because it recognized that police departments need some flexibility in prescribing their methods of processing different suspects. As the Fourth Circuit has observed, "administrative steps incident to a particular arrest will necessarily vary with geographical factors and with local police and court system practices as well as with innumerable factual exigencies." Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1133, 1140 (4th Cir.1982). In Sanders v. City of Houston, 543 F.Supp. 694 (S.D.Tex.1982) (Sanders ), aff'd mem., 741 F.2d 1379 (5th Cir.1984), the court rejected the interpretation of "administrative steps" as limited to transportation to the station, booking, and filing charges. The court looked to cases construing Fed.R.Crim.P. 5(a) for guidance on what procedures should be permissible before an accused is taken before a judicial officer. The court concluded that "administrative steps" included "completing paperwork, searching the suspect, inventorying property, fingerprinting, photographing, checking for prior record, laboratory testing, interrogating the suspect, verifying alibis, ascertaining similarities to other related crimes, and conducting line-ups." Id. at 700.[1]
 
 
 16
 As we read Gerstein, "administrative steps" include procedures which provide the police with basic information from the suspect. An interview may inform the police of the suspect's identity, residence, competence, and whether it is safe to release the suspect pending further proceedings. Moreover, an interview may inform the police that the case is no longer worth pursuing. It provides an early opportunity for the suspect to exculpate himself. See Patzig v. O'Neil, 577 F.2d 841, 847 (3d Cir.1978) (detention reasonable in part because "police were processing [suspect], and were administering tests, the results of which might have been exculpatory."); Sanders, 543 F.Supp. at 700; but see Mabry v. County of Kalamazoo, 626 F.Supp. 912, 914 (W.D.Mich.1986) (Mabry ). We believe that the Kanekoas' and Melemai's interviews, under the circumstances, may have constituted administrative steps which justified detention. That the Kanekoas and Melemai were detained so that the police could conduct an interview did not violate the fourth amendment as a matter of law if they were not for the purpose of building a case. The question then becomes how promptly the interviews were held and whether they were for an illegal purpose.
 
 
 17
 The police delayed interviewing the Kanekoas and Melemai because the suspects were intoxicated when arrested. The Kanekoas and Melemai, conceding their insobriety, complain that the police presented no evidence in the district court to show that they were incoherent or uncooperative and therefore incapable of being promptly interviewed. Thus, they argue, their intoxication cannot serve as a basis for delaying the probable cause hearing. In United States v. Manuel, 706 F.2d 908, 914 (9th Cir.1983), the police delayed interrogating Manuel for approximately 18 hours because he was intoxicated. He claimed that this delay violated Fed.R.Crim.P. 5(a)'s requirement of prompt arraignment. We stated that "[q]uestioning him [while intoxicated] would have been much more likely to produce an unfair and involuntary confession than the procedure actually used." Id. at 914. We find this reasoning applies equally to the fourth amendment. We hold that any delays in conducting administrative procedures caused by the Kanekoas' and Melemai's intoxication were not unreasonable per se.
 
 
 18
 The question then is whether the delays were longer than necessary for the Kanekoas and Melemai to become sober. This factual issue was presented to the fact finders in both actions. We test the jury's factual determination as to the Kanekoas by deciding whether any reasonable jury could have found the delay periods reasonable. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). Our test for findings by the district court in Melemai are whether they are clearly erroneous. McConney, 728 F.2d at 1200. We conclude that a reasonable jury could find the Kanekoas' delay reasonable and a judge could find the Melemai delay was also reasonable without being clearly erroneous. The issue is not determined solely by counting hours and minutes. Instead, the totality of the circumstances must be evaluated, including the extent of inebriation and the time reasonably necessary to allow the suspect to become sober. Under the facts of this case, we cannot say that a finding that the delay was reasonable should be reversed.
 
 
 19
 The Kanekoas and Melemai make a serious accusation, charging that their detentions were caused by the police's desire to gather evidence, interview witnesses, and build a case against them. We agree that the fourth amendment does not permit the police to detain a suspect merely to investigate. Llaguno v. Mingey, 763 F.2d 1560, 1568 (7th Cir.1985) (en banc). Such conduct does not constitute "administrative steps incident to arrest." Indeed, it is inimical to the fourth amendment for the police to arrest now, and investigate later for probable cause. See Gerstein, 420 U.S. at 120 n. 21, 95 S.Ct. at 866 n. 21; see also Mallory v. United States, 354 U.S. 449, 454, 77 S.Ct. 1356, 1359, 1 L.Ed.2d 1479 (1957); United States v. Wilson, 838 F.2d 1081, 1085 (9th Cir.1988). But that did not happen here. The Kanekoas and Melemai concede that the police had probable cause to arrest them.[2]
 
 
 20
 The key issue is whether the detention was legal. The fourth amendment does not prohibit the police from investigating a suspect while the suspect is legally detained. Because the police had legitimate reasons for detaining the Kanekoas and Melemai, we cannot conclude as a matter of law that the police violated their fourth amendment rights by conducting an investigation while the suspects were in custody. Rather, this is an issue of fact: if the Kanekoas and Melemai were detained so the police could conduct an investigation, then the police violated their fourth amendment rights; but if the Kanekoas and Melemai were detained while the police promptly conducted administrative procedures, then the police did not violate their fourth amendment rights. See Mabry, 626 F.Supp. at 915 (whether police completed "requisite administrative steps" in reasonable amount of time is "question of fact for the finder-of-fact to resolve"). Which of these two occurred is to be determined by the fact finder. See McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir.1984) (in section 1983 action against police predicated on fourth amendment violation, factual matters underlying the judgment of reasonableness is a question for the jury); Smiddy v. Varney, 665 F.2d 261, 265 (9th Cir.1981) (same), cert. denied, 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982).
 
 
 21
 At the Kanekoas' and Melemai's respective trials, this issue was presented to the fact finder. In each case, the fact finder concluded that the detention was the result of administrative procedures which were conducted promptly. We do not believe these findings can be overturned. The Kanekoas' and Melemai's intoxication, combined with the police's need to conduct interviews, provided strong evidence for the fact finder to conclude that the detentions were reasonable.
 
 
 22
 In arguing for reversal of these findings, the Kanekoas and Melemai stress Judge Takasugi's pretrial order holding that Honolulu was not entitled to qualified immunity as a defense. Judge Takasugi's order stated that the
 
 
 23
 defendants have developed and maintained an official policy totally disregarding the requirement of promptly charging the arrestee and promptly taking such arrestee before a magistrate for a hearing on probable cause or bail. The defendants have maintained a policy of delayed detention focusing on the 48th hour rather than on the concept of promptness.
 
 
 24
 In this order, however, Judge Takasugi did not rule on the issue of liability. The order did not purport to determine whether the Kanekoas' and Melemai's fourth amendment rights had been violated. To the contrary, the order held that a fact finder must determine if the police had applied the "official policy" to the Kanekoas and Melemai. We need not decide whether Judge Takasugi's pretrial order was correct. That issue is not before us. We agree with Judge Takasugi that merely finding such an "official policy" does not prove that the Kanekoas' and Melemai's fourth amendment rights were violated as a matter of law. Judge Takasugi's order does not require reversal of the fact finders' determinations.
 
 III
 
 25
 The Kanekoas contend that the district judge erred in instructing the jury. We review for an abuse of discretion. Hasbrouck v. Texaco, 842 F.2d 1034, 1044 (9th Cir.1987); United States v. Wellington, 754 F.2d 1457, 1463 (9th Cir.), cert. denied, 474 U.S. 1032, 106 S.Ct. 592, 593, 88 L.Ed.2d 573 (1985).
 
 
 26
 The district court instructed the jury that:
 
 
 27
 If you find that the delayed detention of plaintiffs resulted from defendants['] policy, which I have described to you, and/or if you find that plaintiffs were unreasonably denied their constitutional rights, then each of the plaintiffs is entitled to damages in such amount as in your judgment will fairly and adequately compensate them for harm which each of them suffered.
 
 
 28
 The Kanekoas assert that as instructed, the jury could have determined that even though their detention violated the Constitution, the police should be exonerated because the delay was reasonable.
 
 
 29
 The record reveals that the allegedly problematic language in this instruction was offered by the Kanekoas. Thus, the Kanekoas invited any possible error. In this circumstance, they cannot now complain. Jartech, Inc. v. Clancy, 666 F.2d 403, 407 (9th Cir.), cert. denied, 459 U.S. 826, 103 S.Ct. 58, 74 L.Ed.2d 62 (1982). We hold that the district court did not abuse its discretion in instructing the jury.
 
 IV
 
 30
 The Kanekoas argue that the district judge erred in allowing the jury to hear evidence concerning the circumstances surrounding their arrests. The Kanekoas assert that such evidence was not relevant to the issue at trial: whether the Kanekoas were detained in violation of the fourth amendment. Moreover, the evidence was highly prejudicial; it permitted the jury to conclude the Kanekoas got what they deserved.
 
 
 31
 We review for an abuse of discretion. Maddox v. Los Angeles, 792 F.2d 1408, 1417 (9th Cir.1986). The trial judge has wide latitude in the admission of evidence. Lies v. Farrell Lines, Inc., 641 F.2d 765, 773 (9th Cir.1981). "Trial judges are better able to sense the dynamics of a trial than we can ever be, and broad discretion must be accorded them in balancing probative value against prejudice." Longenecker v. General Motors Corp., 594 F.2d 1283, 1286 (9th Cir.1979) (citations omitted). The trial judge's decisions on admissibility will not be disturbed unless there has been an abuse of discretion which resulted in prejudice. Cassino v. Reichhold Chemicals, Inc., 817 F.2d 1338, 1342 (9th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988).
 
 
 32
 This evidence introduced by Honolulu was relevant to the issue of damages. The evidence showed that the police had probable cause to arrest. Thus, the jury could find that even if the Kanekoas had received a probable cause hearing, the hearing would not have resulted in an earlier release. Honolulu presented this evidence to show that any damage caused by a delayed hearing was nominal. We cannot conclude, therefore, that the trial judge abused his discretion in admitting evidence of the circumstances surrounding the arrests.
 
 V
 
 33
 Finally, the Kanekoas argue that the magistrate erred at voir dire by refusing to ask the prospective jurors certain specific questions submitted by the Kanekoas:
 
 
 34
 Do any of you believe that arrested persons have too many rights?
 
 
 35
 Do any of you believe that the Constitution should be changed because it provides to[o] many rights to criminals?
 
 
 36
 A trial judge is given wide latitude in conducting the voir dire. Rosales-Lopez v. United States, 451 U.S. 182, 189, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981) (plurality opinion). A trial judge's failure to ask specific questions is reviewed for abuse of discretion. United States v. Jones, 722 F.2d 528, 529 (9th Cir.1983) (per curiam). A trial judge need not use questions in the exact form suggested by counsel, nor must the trial judge ask questions which are cumulative. Darbin v. Nourse, 664 F.2d 1109, 1113 (9th Cir.1981). A trial judge abuses his or her discretion if the questions asked are not reasonably sufficient to test the jury for bias or partiality. United States v. Baldwin, 607 F.2d 1295, 1297 (9th Cir.1979).
 
 
 37
 The Kanekoas' suggested questions do not probe the prospective jurors' ability to serve as impartial finders of fact. Rather, the Kanekoas' questions were designed to locate attitudes concerning the law. We do not rely on the jury to determine the law; it is the judge's function to instruct the jury as to the law. Thus, the magistrate did not abuse his discretion.
 
 
 38
 AFFIRMED.
 
 NELSON, Circuit Judge, dissenting in part:
 
 39
 I dissent from Part II of the majority opinion because I believe that the Hawaii police department's detention of Damien Melemai, Warren Kanekoa, and Charles Kanekoa violated their constitutional right to a prompt probable cause hearing. The officers detained Melemai and the Kanekoas after warrantless arrests without presenting them before a neutral magistrate for a determination of probable cause for a constitutionally impermissible purpose and for an unreasonable length of time. The fourth and fourteenth amendments and this circuit's prior decisions require reversal of the decision below. See Bernard v. City of Palo Alto, 699 F.2d 1023, 1025 (9th Cir.1983).
 
 
 40
 The Supreme Court has held that the fourth amendment requires "as a condition for any significant pretrial restraint on liberty" a fair and reliable determination of probable cause by a judicial officer "either before or promptly after arrest." Gerstein v. Pugh, 420 U.S. 103, 125, 95 S.Ct. 854, 868, 43 L.Ed.2d 54 (1975). The Court reasoned that "a policeman's on-the-scene assessment of probable cause provides legal justification only for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate." Id. at 113-14, 95 S.Ct. at 862-63 (emphasis added). When the "administrative steps" have been completed, the police must take the suspect before a magistrate to establish probable cause, or they must let him go.[1]
 
 
 41
 The Supreme Court has not specified which police activities constitute "administrative steps" for which police may delay presentment of arrestees. The majority rests its finding that a pre-presentment interview is such an administrative step on Gerstein's reference to steps that are "incident" rather than "necessary" to an arrest. [Majority Opinion at 610] The majority ignores the language in our circuit precedent interpreting Gerstein, however, which indicates that the police may only delay presentment for those administrative steps that are necessary to presentment of the case before a magistrate. Bernard, 699 F.2d at 1025. We held in Bernard that "[d]etention for less than 24 hours without a probable cause hearing would violate the Constitution in a particular case if the circumstances were such that the administrative steps leading to a magistrate's determination reasonably could have been completed in less than 24 hours." Id. Similarly, the court observed that although "[t]he County's criminal procedures are left to the county to determine," id., they are "subject[ ] to the requirement that the detention of persons arrested without a warrant be justified by a magistrate reasonably close to the time required to prepare and make the necessary showing to a magistrate." Id. The court was contemplating such pre-presentment necessities as "booking" an arrestee, id. at 1024, and preparing probable cause affidavits, id. at 1026. The Seventh Circuit used similar language in Llaguno v. Mingey, 763 F.2d 1560 (7th Cir.1985), holding that a forty-two hour detention was too long because it did not "require 42 hours to book David Llaguno and complete other paperwork necessary for bringing him before the magistrate." Id. at 1568. The Llaguno court defined "brief detention" as the period necessary "to allow some interval for booking the arrested person and completing other paperwork before presenting him to the magistrate." Id. The court summarized its holding by stating that the plaintiff was entitled to a directed verdict that the defendants were liable for his being held in jail "beyond the brief period that would have been necessary to book him and bring him before a magistrate." Id. This language demonstrates that, like our own circuit in Bernard, the Seventh Circuit believed that Gerstein authorized police to delay presentment of an arrestee before a neutral magistrate for a determination of probable cause only for administrative steps, such as completing initial, minimal paperwork and writing probable cause affidavits, that are "necessary for bringing him before the magistrate." Id. Such steps do not include interviewing the arrestee.[2] Mabry v. County of Kalamazoo, 626 F.Supp. 912, 914 (W.D.Mich.1986); Lively v. Cullinane, 451 F.Supp. 1000, 1005 (D.D.C.1978) (holding that it is an unconstitutional seizure to detain an individual without a probable cause hearing for a period of time longer than it reasonably takes to document the arrest and to search and secure the individual to ensure that he will not harm anyone or destroy evidence, and holding that paperwork not necessary to presentment, fingerprinting, and line-ups are not administrative procedures "incident" to an arrest for which a probable cause evaluation may be delayed); cf. Doulin v. City of Chicago, 662 F.Supp. 318, 327 (N.D.Ill.1986) (holding that post-arrest detention of misdemeanor arrestees to permit identification via fingerprint clearing was not an administrative step incident to arrest permitted by the fourth amendment prior to a neutral determination of probable cause to arrest), rev'd on other grounds sub nom. Robinson v. City of Chicago, 868 F.2d 959 (7th Cir.1989) (holding that former arrestees lacked standing to seek equitable relief). But see Sanders v. City of Houston, 543 F.Supp. 694 (S.D.Tex.1982), aff'd. mem., 741 F.2d 1379 (5th Cir.1984); cf. Warren v. City of Lincoln, 864 F.2d 1436 (8th Cir.1989) (implicitly holding that questioning is a valid administrative procedure for which presentment before a magistrate may be delayed, where the arrestee was detained for two hours and twenty minutes prior to presentment).
 
 
 42
 By analogy, Supreme Court and Ninth Circuit cases interpreting Federal Rule of Criminal Procedure 5(a) support this conclusion. Although Rule 5(a) does not apply to state cases, it sets out a standard for prompt presentment analogous to the constitutional standard as interpreted by Gerstein, 420 U.S. at 113-14, 95 S.Ct. at 862-63. See, e.g., Doulin, 662 F.Supp. at 333. The Supreme Court has indicated that Rule 5(a) prohibits police from delaying presentment of a detainee before a neutral magistrate for the purpose of interviewing the detainee. The Supreme Court held:
 
 
 43
 The scheme for initiating a federal prosecution is plainly defined. The police may not arrest upon mere suspicion but only on "probable cause." The next step in the proceeding is to arraign the arrested person before a judicial officer as quickly as possible so that he may be advised of his rights and so that the issue of probable cause may be promptly determined. The arrested person may, of course, be "booked" by the police. But he is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt.
 
 
 44
 Mallory v. United States, 354 U.S. 449, 454, 77 S.Ct. 1356, 1359, 1 L.Ed.2d 1479 (1957). The Ninth Circuit has interpreted Mallory and Rule 5(a) to prohibit officers from delaying presentment of a detainee for the purpose of interrogation. United States v. Mayes, 417 F.2d 771, 772 (9th Cir.1969) (holding that the delay in bringing a defendant before a magistrate was unreasonable where the three-hour interval between his arrest and the time after which a magistrate would be unavailable was devoted to questioning the defendant).[3]
 
 
 45
 The Supreme Court did not distinguish, as the majority here attempts to do, between interviews that merely "provide the police with basic information" and those that are "for the purpose of building a case." [Majority Opinion at 611 Indeed, the Court explicitly held that Rule 5(a) prohibits police from interviewing a suspect prior to presentment before a magistrate regardless of their purpose in conducting the interview. The police may not "carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt." Mallory, 354 U.S. at 454, 77 S.Ct. at 1359 (emphasis added). Not only does the majority's distinction between interviewing to gather basic information and interviewing to buttress a case contravene Supreme Court authority, it is also impractical. Because the only difference between an interview conducted "for the purpose" of accumulating evidence and one conducted merely to gather information is the subjective intent of the interviewer, the majority's rule invites circumvention. A factfinder's determination whether the delay violated a detainee's constitutional rights will turn on the officers' version of their own subjective intentions in interviewing the detainee. This is particularly true because the majority's opinion virtually authorizes police to question detainees about their involvement in the alleged criminal activities. [Majority Opinion at 611] (defining the "basic information" police may seek in a pre-presentment interview to include information that will aid the police in evaluating the strength of their case) ] The majority rule may also provide overly zealous police, uncertain whether they have sufficient evidence to meet the probable cause standard but aware that a "routine" interview may uncover additional facts, with great incentive to arrest. See Llaguno, 763 F.2d at 1568 ("The only reason for delay in bringing [the defendant] before a magistrate was that the police hoped to build a case against [him] while he was in jail.... [To allow such detentions] would inject an element alien to our system--imprisonment on suspicion, while the police look for evidence to confirm their suspicion.").
 
 
 46
 The majority asserts that the police have an important interest in interviewing a detainee because an interview "may inform the police of the suspect's identity, residence, competence, [ ] whether it is safe to release the suspect pending further proceedings," and whether to charge the suspect. [Majority Opinion at 611][4] The majority fails, however, to identify what interest the police have in interviewing the detainee prior to presentment before a neutral magistrate to determine whether the police have probable cause to detain the individual at all. An interview, like other information-gathering functions, could as easily and efficiently be performed after presentment as before. Indeed, should the magistrate determine that the police did not have probable cause to arrest the detainee, a prompt probable cause hearing would obviate the need to perform these information-gathering tasks. To the extent that the officers' purpose in interviewing the suspect is to gather information to strengthen their showing of probable cause, their purpose is clearly unconstitutional, as the majority acknowledges. [Majority opinion at 612] Gerstein, 420 U.S. at 120 n. 21, 95 S.Ct. at 866 n. 21; Llaguno, 763 F.2d at 1568. The police do not have a sufficient interest in interviewing a detainee prior to a probable cause hearing to justify a possibly unwarranted extension of the intrusion on an individual's liberty caused by detention.
 
 
 47
 As the Supreme Court observed in Gerstein, "[o]nce the subject is in custody ... the reasons that justify dispensing with the magistrate's neutral judgment evaporate." Gerstein, 420 U.S. at 114, 95 S.Ct. at 863. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. Nor have the police cited any interest in administrative efficiency that requires that interviews be conducted prior to presentment. In contrast, the individual's interest in avoiding any unnecessary period of involuntary confinement by the police is great. The Supreme Court recognized the individual's strong interest in avoiding such a restriction on his liberty, observing that "[t]he consequences of prolonged detention may be more serious than the interference occasioned by the arrest," id. at 114, 95 S.Ct. at 863, imperiling the suspect's job and impugning his reputation. The individual's interest in avoiding the indignity of physical restraint itself is strong. Therefore, a detainee's liberty interest in a prompt determination whether the police had probable cause to arrest him prevails over the police's desire to interview the detainee before such a determination.
 
 
 48
 Although the police's delay of presentment of Melemai and the Kanekoas before a magistrate for the purpose of interviewing them was constitutionally invalid, the police were justified in delaying presentment to allow the detainees to regain sobriety. See United States v. Manuel, 706 F.2d 908, 914 (9th Cir.1983) ("Although we do not sanction delay of any kind in bringing an accused person before a magistrate, delay engendered by such humanitarian motives [as allowing an inebriated person to regain sobriety] can hardly be deemed unreasonable per se."). Even if the police in this case had been motivated by a desire to allow the detainees to regain sobriety to avoid involuntary confessions and to allow them to participate meaningfully in their probable cause hearings, rather than by a desire to interview the detainees, however, the police detained Melemai and the Kanekoas for unreasonably long periods of time. The majority argues that whether the length of appellants' detentions was unreasonable is a question for the fact-finder to determine after considering all of the circumstances. This argument "misconstrue[s] the nature of the right [appellants] enjoy[ ] under Gerstein. The Supreme Court in Gerstein sharply limited the 'balancing,' 'consideration of all the circumstances,' or determination of 'reasonableness' a court or finder-of-fact should engage in such cases when it stated that the existence of probable cause justifies only the arrest and 'a brief period of detention to take the administrative steps incident to arrest.' " Mabry, 626 F.Supp. at 915 (quoting Gerstein, 420 U.S. at 113-14, 95 S.Ct. at 862-63). Where the length of detention is clearly unreasonable, it violates the arrestee's rights under Gerstein as a matter of law, and is not within the purview of the fact-finder. See id.; Bernard, 699 F.2d at 1025.
 
 
 49
 The length of appellants' detentions in this case was clearly unreasonable and violated their rights as a matter of law. All three men were detained for at least several hours after they could reasonably have been expected to be completely sober, and none of the three men was given a second intoxilyzer test. Melemai was detained for twenty hours. He was arrested at approximately 5:40 p.m. His blood alcohol level was found to be .14 percent when it was measured sometime between 6:15 p.m. and 8:00 p.m. An average man's blood alcohol level would drop from .14 percent to .05 percent, the level at which Honolulu Police Department regulations permit detainees to be interviewed within four hours, and would reach .00 percent in an additional three hours. See 13 The New Encyclopedia Britannica 218 [hereinafter Britannica ]. Therefore, Melemai was completely sober at the very latest by early morning, probably by 3:00 a.m. The defendants observe that no magistrates were available to conduct probable cause hearings between 6:00 p.m. and 8:00 a.m. Even if detainment until morning was justified by the unavailability of a magistrate, a question I do not address, Melemai's detention without a probable cause hearing until his release at 1:30 p.m. of the day following his arrest was unconstitutional. Melemai was delayed for approximately ten and one-half hours beyond the time he regained sobriety, and five and one-half hours beyond the time a magistrate was available. The police have failed to justify this delay by citing any "administrative step incident to arrest" that they needed to complete prior to presentment. Therefore, the judge's finding that Melemai's detention was reasonable was clearly erroneous.
 
 
 50
 The officers also detained Charles Kanekoa for approximately five hours longer than was necessary to allow him to regain sobriety. Charles had a blood alcohol level of .08 percent at 5:30 a.m. His alcohol level probably would have reached .05 by 6:30 a.m. and .00 percent by 9:30 a.m. 13 Britannica 218. The police did not release Charles, however, until 2:40 p.m. Even if Charles remained inebriated significantly longer than an average male, his extended detention without presentment before a neutral magistrate was unreasonable.
 
 
 51
 Warren Kanekoa's detention also was unreasonable. Warren's blood alcohol level was .14 percent at 5:30 a.m. It probably would not have dropped to .05 percent until 9:30 a.m., and to .00 percent until 11:30 a.m. See 13 Britannica 218. The police did not bring Warren before a magistrate and did not release him until 2:40 p.m. Thus, Warren was not released until approximately three hours after he was completely sober.
 
 
 52
 Even if a pre-presentment interview was a valid administrative step for which presentment may be delayed, the judge's finding that the length of Melemai's detention was not unreasonable was clearly erroneous and no reasonable jury could find that Charles Kanekoa's detention was reasonable as a matter of law. Melemai and Charles Kanekoa were both detained well beyond the period of time necessary to allow them to regain sobriety and to conduct an interview. Melemai was completely sober for approximately ten and one-half hours before he was interviewed. Even if it was reasonable for the police to detain Melemai until 8 a.m., when the detective working on Melemai's case returned to duty, a question we need not address, it was not reasonable to delay his interview while they continued to investigate for another three and one-half hours. The only explanation provided for the failure to interview Melemai at 8 a.m. is that "early-morning interviews are inappropriate." This explanation is inadequate. It was a much greater intrusion on Melemai's liberty to detain him from 8 a.m. to 11:30 a.m. without a neutral determination of probable cause than it would have been to conduct an "early-morning" interview at 8 a.m. Because the Constitution allows the police to delay a probable cause hearing only to take the "administrative steps incident to arrest," Gerstein, 420 U.S. at 114, 95 S.Ct. at 863, and the police have failed to cite any need to complete an administrative step during the three and one-half hour period they delayed Melemai the day after his arrest, the detention was unreasonable even if it was constitutionally permissible to delay the probable cause hearing in order to conduct an interview.
 
 
 53
 Similarly, the police delayed interviewing Charles Kanekoa for several hours after he was completely sober while they continued to search for evidence and for the complaining witnesses, without any reference to an administrative need. Therefore, like Melemai, Charles Kanekoa was detained unconstitutionally even if an "interview" were an administrative step incident to arrest for which police could delay a probable cause hearing.
 
 
 54
 Although the appellees violated Melemai's and the Kanekoas' constitutional rights, compensatory damages are not available because the appellants do not contest the findings below that the police had probable cause to arrest them. Had the police brought the appellants before a magistrate as soon as they were sober, the magistrate would have found probable cause and returned them to the police for interviews, so that appellants probably would not have been released until even later than they in fact were. Nominal damages, however, are available. See Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978).
 
 
 55
 Because Melemai and the Kanekoas were detained for an unconstitutional purpose and for an unreasonable length of time without a neutral determination of probable cause, I would reverse the decision below and remand for an award of nominal damages and a determination whether an award of attorneys' fees is appropriate.
 
 
 
 [1]
 The dissent states that our circuit in Bernard v. City of Palo Alto, 699 F.2d 1023, 1025 (9th Cir.1983), interpreted administrative steps as limited to procedures "necessary" to presentment of the case before a magistrate. Dissent at pp. 615-616. We disagree. Bernard did not address what constitutes administrative steps incident to arrest. There is nothing in Bernard to indicate that the suspects even argued that the police's post-arrest procedures were not administrative steps. Thus, the issue of whether the fourth amendment restricts police to procedures "necessary" for presentment before the magistrate was not before our court. Rather, Bernard discussed the time limit under Gerstein before a suspect must be afforded a probable cause hearing. Bernard interpreted Gerstein's "brief period" and "prompt" language for determining impermissible periods of delay in presentment. Bernard, therefore, does not conflict with our holding regarding administrative steps
 
 
 [2]
 The dissent asserts that our holding will encourage police to arrest without probable cause because a routine interview may later uncover facts to justify the arrest. Dissent at p. 617. Though sympathetic to the dissent's concerns, we think them unfounded. It is axiomatic that police must have probable cause prior to executing an arrest. Any facts discovered during post-arrest procedures will not save an otherwise illegal arrest. Wong Sun v. United States, 371 U.S. 471, 480, 482-84, 83 S.Ct. 407, 413, 414-16, 9 L.Ed.2d 441 (1963); see also Mallory, 354 U.S. at 454, 77 S.Ct. at 1359. Our decision does not alter the incentives for police to arrest only on the basis of probable cause
 The dissent goes on to suggest that, by distinguishing between legal and illegal purposes for an interview, the determination of whether a delay in presentment before a magistrate violated a suspect's constitutional rights will depend solely upon the officers' version of their subjective intentions in interviewing the suspect. Dissent at p. 617. We disagree. As occurred in this case, the fact finder will evaluate all the circumstances surrounding the arrest and detention--including such objective factors as the type of questions asked the suspect--to determine whether an interview was conducted to establish probable cause.
 
 
 [1]
 The Court has never said how long the "brief period" may be. The American Law Institute believes that two hours are sufficient. Model Code of Pre-Arraignment Procedure, sec. 130/2(1) (1975). The district court in the District of Columbia required an explanation for a delay of greater than one and one-half hours, because that was the average time it should normally take to process an arrestee. See Lively v. Cullinane, 451 F.Supp. 1000, 1003 (D.D.C.1978). The Seventh Circuit has held that four hours requires some explanation. See Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 437 (7th Cir.1986) (citing Moore v. Marketplace Restaurant, Inc., 754 F.2d 1336, 1350-52 (7th Cir.1985)), cert. denied, 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987). So too has a district court in Illinois. See Doulin v. City of Chicago, 662 F.Supp. 318, 332 (N.D.Ill.1986). In Bernard v. City of Palo Alto, 699 F.2d 1023 (9th Cir.1985), the Ninth Circuit upheld a district court's decision that a twenty-four hour delay in the County of Santa Clara was per se unconstitutional. Id. at 1025. A district court in Texas came to the same conclusion. Sanders v. City of Houston, 543 F.Supp. 694, 702 (S.D.Tex.1982) ("Hence, ... when a person has been arrested on a policeman's assessment of probable cause, the person arrested must be brought before a judicial officer as soon as possible, but in any event not later than twenty-four (24) hours after the arrest."), aff'd, 741 F.2d 1379 (5th Cir.1984). A recent Second Circuit decision has come out at the far end of the scale, concluding that a prearraignment detention of seventy-two hours was constitutionally permissible, though undesirable, given the particular causes of delay in the case before the court and the difficulties in curing that delay. See Williams v. Ward, 845 F.2d 374, 388-89 (2d Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 818, 102 L.Ed.2d 807 (1989)
 
 
 [2]
 The Ninth Circuit came to the same conclusion in an analogous area of law. In United States v. Wilson, 838 F.2d 1081, 1085 (9th Cir.1988), we interpreted 18 U.S.C. Sec. 3501(c) (1982), which mandates that a confession "shall not be inadmissible solely because of delay in bringing [the defendant] before a magistrate ... if such confession was made or given by such person within six hours immediately following his arrest or other detention." Id. Subsection (c) excuses delays for more than six hours only when such delay "is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer." Id. Sec. 3501(c). We held in Wilson that a delay in bringing a detainee before a magistrate for the purpose of interviewing the detainee is unreasonable. Wilson, 838 F.2d at 1085. We stated that "[t]he desire of the officers to complete the interrogation is, perhaps, the most unreasonable excuse possible under Sec. 3501(c)." Id
 
 
 [3]
 The circuits are in conflict regarding this issue. The D.C. Circuit, like the Ninth Circuit, concluded that Rule 5(a) and Mallory prohibited pre-presentment detention for the purpose of interviewing an arrestee. See, e.g., Gross v. United States, 393 F.2d 667, 668 (D.C.Cir.1967); Perry v. United States, 336 F.2d 748, 750-51 (D.C.Cir.1964); Spriggs v. United States, 335 F.2d 283, 287 (D.C.Cir.1964). The Eighth Circuit, however, has interpreted Rule 5(a) to permit federal law enforcement officials to delay presentment in order to interview the detainee, despite the Supreme Court's language. See United States v. Boyer, 574 F.2d 951, 955 (8th Cir.), cert. denied, 439 U.S. 967, 99 S.Ct. 457, 58 L.Ed.2d 426 (1978). The Boyer court did not refer to the Supreme Court's holding in Mallory. The Second Circuit also held in 1965 that Rule 5(a) allows police to detain suspects for a reasonable period of time in order to question them. See United States v. Middleton, 344 F.2d 78, 83 (2d Cir.1965)
 
 
 [4]
 The majority's interpretation of the term "administrative steps" will give police departments "flexibility" [Majority Opinion at 610] to delay presentment of arrestees before a magistrate in order to perform any function that "provide[s] the police with basic information from the suspect." [Majority Opinion at 611] The police's quest for "basic information" in this case resulted in twenty hours of imprisonment of a man ultimately not charged