**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 25 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ELVIE FINKS,

      Plaintiff-Appellant,

v.

LONGFORD EQUIPMENT
INTERNATIONAL, a foreign
corporation,

      Defendant-Appellee.

No. 98-1433
(D.C. No. 97-B-1196)
(District of Colorado)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **PORFILIO**, Circuit Judges, and **ROGERS**,[**] Senior District Judge.

---

Elvie Finks brought this diversity action against Longford Equipment International, claiming she was injured by a defective card folding machine manufactured by Longford. A jury found instead that Ms. Finks' injuries were the

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

    The parties have requested this case be submitted without oral argument, and we have honored that request and determined the matter on the briefs.

[**]The Honorable Richard D. Rogers, Senior District Judge for the U.S. District Court for the District of Kansas, sitting by designation.

result of her negligence and that of her employer, Deluxe Current, Inc. (Current). Ms. Finks now contends that verdict was the product of the district court's denial of her motion in limine to voir dire potential jurors on the issue of "lawsuit abuse."[1] Further, she maintains the district court abused its discretion under Colorado District Court Local Rule 47.2 in prohibiting her from communicating with members of the jury to determine whether they had been affected by a two-day hiatus in their deliberations. The two errors, she contends, eviscerated her Seventh Amendment right to an impartial jury. We disagree and affirm.

Ms. Finks worked for Current for eight years operating the Longford card folding machine. One day in 1995, when she discovered the cards were not being folded at the "score section," she attempted to adjust them. Her right hand slipped into the rollers, and she suffered an abrasion on her hand. No bones were broken and she had no nerve damage. Nonetheless, she sustained a permanent chronic pain condition.

Ms. Finks brought this action against Longford, alleging its failure to provide the machine with a guard over the rollers constituted a defective design.

---

[1]The term is undefined in the briefs leaving it for us to speculate about its meaning.

Longford designated Current as a non-party at fault under Colorado Revised Statutes § 3-21-111.5[2] based on Current's alterations to the machine.

Prior to trial, Ms. Finks' attorney, claiming Longford's counsel was known to interject what plaintiff's counsel denominated "lawsuit abuse" into his defenses, filed a motion in limine asking the court to prohibit any such arguments. The court denied the motion, prompting Ms. Finks' counsel to ask the court to voir dire the jury with specific questions relating to their attitudes on the right to sue, money damages, personal injury lawyers, and damage awards. The court refused to ask these specific questions and instead inquired of the entire jury panel:

> Do any of you disagree with this proposition: Each case must be analyzed and decided on its own merits. Does anybody have any quarrel with that proposition?

> What we do ask of the jury is that the jury render its decision only on the basis of the facts determined from the evidence presented in this trial and the law that is given to you to apply that evidence. Do any of you have any question about your ability to do that?

The jury subsequently returned a special verdict finding that Longford was not negligent; did not produce a defective machine which caused the injuries; and

---

[2]Colo. Rev. Stat. § 13-21-111.5(4) was intended to eliminate the harsh effects of joint and several liability and substituted a rule that each wrongdoer is liable only for the portion of a plaintiff's injuries that is represented by the tort-feasor's own percentage of fault.

that Current and Ms. Finks were negligent, apportioning 55% to Current and 45% to Ms. Finks.

In this appeal, Ms. Finks contends although after jury selection the trial court acknowledged the defense apparently intended to show Ms. Finks' motive was to "fake, exaggerate or malinger," Longford was permitted to permeate the trial with "lawsuit abuse" innuendo.[3] Thus, she argues she was deprived of her Seventh Amendment right to a fair trial because she was unable to meaningfully exercise her challenges for cause, not knowing which jurors were predisposed to a "lawsuit abuse" argument.

We initially observe that Ms. Finks' argument seemingly attacks the efforts of the defense to challenge her veracity and the weight of the evidence she presented. Indeed, we believe many of the statements to which she ascribes the sobriquet, "lawsuit abuse," fairly question those elements of the case. We know of no proposition that suggests it is inappropriate for either side of a lawsuit to bring the veracity of a party or the weight of the evidence to the attention of the

_____

[3]Ms. Finks cites defense counsel's referring in his opening statement to her "trivial injury" and her blaming "the fact that she cannot work on the fact that she had had a real minor pinching of the fingers." Defense counsel told the jury she blamed her headaches, leg pain and backaches on the machine and wants $600,000 for having her fingers pinched. In closing argument, defense counsel characterized the event as Ms. Finks' opportunity to get out of a boring job "by some magic event" so she'd never have to work again. Counsel told the jury he, too, had fantasized about never having to work again - and "that's what you're being asked to do for bruised fingers."

jury.  We also note none of the statements here questioned by Ms. Finks were objected to at trial, nor did she object when the court did not pose the voir dire questions she had suggested.  Nonetheless, we shall proceed to consider the arguments raised.

Ms. Finks first contends the district court erred by refusing to voir dire the venire on the questions submitted by her counsel.  She argues the defense was thus able to employ a "tactic" she could not counter because she was unable to determine potential bias on the part of the jury.  As a result, she maintains, her Seventh Amendment right to a trial by an impartial jury was violated.

We start with the proposition that voir dire is conducted in federal trials at the discretion of the court.  Fed. R. Civ. P. 47(a).  ***Smith v. Vicorp, Inc.***, 107 F.3d 816, 818 (10th Cir. 1997).  The content of the voir dire is also founded upon that discretion.  ***Id.***  Our review here, then, is to determine whether the district court abused its discretion.

Ms. Finks posits that the purpose of voir dire is to allow the trial court "to remove prospective jurors who will not be able to impartially follow the court's instructions and evaluate the evidence."  She further argues proper voir dire "is to prove each prospective juror's state of mind to enable the trial judge to determine actual bias and to allow counsel to assess suspected bias or prejudice."  To buttress those points, Ms. Finks cites ***Darbin v. Nourse***, 664 F.2d 1109, 1113 (9th

Cir. 1981), for the proposition that if an "inquiry requested by counsel is directed toward an important aspect of the litigation about which members of the public may be expected to have strong feelings or prejudices, the court should adequately inquire into the subject on voir dire."

All that having been argued, however, Ms. Finks fails to establish to our satisfaction how the voir dire conducted by the district court missed the mark or constituted an abuse of discretion. First of all, the plaintiff did not elucidate the "important aspect" of this case to which her voir dire questions were directed. As we have already noted, the statements to which she now objects facially appear to be fair game. Moreover, there was nothing about the nature of this case that was inherently provocative of bias or the suspicion of bias on the part of prospective jurors. There had been no pretrial publicity about it, and nothing suggests Ms. Finks herself would have manifest any persona that would provoke jurors to close their minds against her. Nor was there anything inherent in the relationship between plaintiff and defendant upon which potential jury bias might have been presumed. Second, the questions she wanted to have asked were perhaps more detailed, but no more prone to disclose important bias than those asked by the trial court. Third, she did not renew her request for additional voir dire, or suggest to the trial court why its questions were inadequate. Although hindsight

indicates the court might have asked some or all of those questions, we cannot say its failure to do so constituted an abuse of discretion.

Indeed, Ms. Finks contends the purpose underlying the submission of her suggested voir dire was to determine whether the jury would decide the case on the basis of the facts in evidence and the law as instructed by the court. Equally, those questions sought to determine whether prospective jurors were aware of their obligation to decide the case on its own merits.[4] Those factors were inherent in the voir dire actually conducted by the court.

Whether the voir dire could have been more searching or whether better questions could have been asked is not the issue here. The issue is whether the district court properly exercised its discretion, and we see nothing in this case to indicate it did not.

In a second contention, Ms. Finks asserts the jury deliberated for one hour on a Friday afternoon before the court excused it for the weekend, "a total of two days." She maintains given that lapse of time, it was necessary to ask jurors whether anything happened over the weekend or whether the break in deliberations altered their feelings about the case. Counsel also suggests

---

[4]We believe it notable those questions also could be fairly viewed to only ferret out a juror's attitude on the law and not to help the district court determine impartiality. *See Kanekoa v. City and County of Honolulu*, 879 F.2d 607 (9th Cir. 1989).

questioning would have enabled her to determine whether any jurors were in fact biased because of "lawsuit abuse."

Colorado District Court Local Rule 47.2 prohibits counsel's communications with jurors after a trial except by permission of the court. We are unpersuaded by the argument. Ms. Finks has not carried her burden of showing the district court erred.

First, nothing in the record even suggests the possibility of the exercise of extrajudicial influence on the jurors. We therefore see no basis for the contention the district court abused its discretion by denying the request. Second, Ms. Finks has presented no authority even tangentially supporting the theory that in the absence of some concrete fact, it is proper to invade the province of the jury, post-trial, to seek juror bias.

**AFFIRMED**.

ENTERED FOR THE COURT

John C. Porfilio
Senior Circuit Judge