Roy MABRY, Plaintiff,

v.

COUNTY OF KALAMAZOO, a Michigan Government Entity, Eric Dunithan, Individually and as a Deputy Sheriff of the County of Kalamazoo, Defendants.

No. K84–530.

United States District Court,
W.D. Michigan, S.D.

Jan. 7, 1986.

Richard D. Stroba of Marovich & Stroba, Kalamazoo, Mich., for plaintiff.

Ronald E. Baylor of Miller, Canfield, Paddock & Stone, Kalamazoo, Mich., for defendants.

## OPINION

ENSLEN, District Judge.

This case is before the Court for the second time on the question of whether it should grant summary judgment for one of the parties. In a bench opinion rendered on December 9, 1985, the Court dismissed the complaint as against defendants Epitome Corporation, d/b/a Doughertys Corner Market, and William Gorman; denied defendants County of Kalamazoo and Eric Dunithan's motion for summary judgment, except as to the issue of whether defendant Dunithan had probable cause to arrest the plaintiff, on which issue the Court granted defendant Dunithan's motion; and, acting *sua sponte*, set a hearing for December 23, 1985, at 4:00 p.m., to consider whether it should grant summary judgment for the plaintiff on the issue of the remaining defendants' liability. The Court's bench opinion of December 9th, and the briefs the parties filed pursuant to that opinion, present three issues for the Court to resolve: (1) did plaintiff's detention over the 1983 fourth of July weekend without a determination of probable cause by a judicial officer violate his rights under the fourth and fourteenth amendments to the

United States Constitution; (2) if it did, can plaintiff hold defendants County of Kalamazoo and Eric Dunithan liable for such detention; and (3) if plaintiff can hold defendant Dunithan liable for an unconstitutional detention, can defendant Dunithan escape liability under the doctrine of qualified immunity. The standard under which the Court shall resolve these issues on this motion for summary judgment is well-established and will not be repeated in detail here. *See Adickes v. S.H. Kress Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Watkins v. Northwestern Ohio Tractor Pullers Association*, 630 F.2d 1155, 1158 (6th Cir.1980); *Federal Rules of Civil Procedure* ("FRCP") 56(c). As Rule 56(c) states, the Court must determine whether there is a genuine issue as to any material fact and, if not, whether either plaintiff or defendant is entitled to judgment as a matter of law.

■ The following facts are undisputed. Defendant Dunithan arrested plaintiff on the evening of July 2nd, 1983, at around 7:10 p.m. on a charge of felonious assault. This Court held at the December 9th hearing that such arrest was made pursuant to probable cause. Defendant Dunithan proceeded to have plaintiff taken to the Kalamazoo County Jail and to process the charge against him, or to "book" him. Plaintiff was detained at the jail for the rest of the day on Saturday and all day Sunday and Monday. An assistant prosecuting attorney reviewed the charge against plaintiff sometime on Tuesday and decided that no charges should be formally filed. Plaintiff then was released from the jail. He alleges he was not released until approximately 6:00 p.m., while defendants indicate he was released sometime during the day. Regardless of which party is correct, it is undisputed that plaintiff was detained for at least sixty (60) hours before being released.

As the Court discussed at the December 9th hearing, the governing standards for this type of case were established by the Supreme Court in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

The Court held in *Gerstein* that the Fourth Amendment "requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Id.* at 114. In the case of an arrest made pursuant to a warrant, that determination would have been made when the warrant was issued. In the case of a warrantless arrest, however, such as what occurred in this case, that determination must necessarily be made after the suspect has been taken into custody. The Supreme Court thus recognized that persons may be detained for a brief period without violating the Fourth Amendment until a judicial officer can make a determination of whether there is probable cause to justify continued detention. The Court defined this brief period as the time necessary "to take the administrative steps incident to arrest." *Id.; see Bernard v. City of Palo Alto*, 699 F.2d 1023, 1025 (9th Cir.1983) (per curiam). Once that time period has passed, however, and the arresting officials have completed the "administrative steps incident to arrest," an arrestee cannot be detained further absent "a determination of probable cause by a neutral magistrate." *Id.; Pugh*, 420 U.S. at 113–14, 95 S.Ct. at 862–63.

The parties have not suggested to the Court how long it took defendant Dunithan, or other personnel of the Sheriff Department or the Jail, to complete the administrative steps incident to plaintiff's arrest. Defendants do not argue, however, that plaintiff's lengthy detention was required for them to complete such steps. Even given, moreover, the liberal interpretation of "administrative steps" the district court for the Southern District of Texas used in *Sanders v. City of Houston*, 543 F.Supp. 694, 700 (S.D.Tex.1982) (steps included "completing paperwork, searching the suspect, inventorying property, fingerprinting, photographing, checking for prior records, laboratory testing, interrogating the suspect, verifying alibis, ascertaining similarities to other related crimes, and conducting line-ups"), *aff'd mem.*, 741 F.2d 1379 (5th Cir.1984), I find that defendants' confinement of plaintiff for over 60 hours violated the standard established in *Gerstein.*

As I stated at the December 9th hearing, several courts have found that holding a person for longer than 24 hours without a determination of probable cause by a judicial officer violates the Fourth Amendment. *E.g., Bernard*, 699 F.2d at 1025–26; *Sanders*, 543 F.Supp. at 702; *Dommer v. Hatcher*, 427 F.Supp. 1040, 1045 (N.D.Ind. 1975), *rev'd in part on other grounds*, 653 F.2d 289 (7th Cir.1981) (*per curiam*). Since this case involves only the complaint of a single individual and thus does not require a determination that would affect the entire class of persons detained at the Kalamazoo County Jail, the Court need not determine whether a "twenty-four hour rule" is constitutionally required in order to find that plaintiff's detention of 60 plus hours was unconstitutional.

Defendants raise a number of arguments in an attempt either to justify their action or to forestall a decision against them at this time. They argue first that the case law is distinguishable on two grounds: (1) prior cases establish only the proposition that "detention prior to establishing probable cause for the purpose of completing an investigation or eliciting inculpatory statements is improper"; and (2) in those cases, judicial officers were readily available. Defendants' Brief at 3. The Court finds these distinctions to be unpersuasive.

The Supreme Court's decision in *Gerstein* established a *per se* rule, without regard to why the person is being held, that detention beyond the time needed to take "the administrative steps incident to arrest" requires a judicial determination of probable cause. Holding a person merely for the purpose of completing an investigation or eliciting inculpatory statements without according him a prompt determination of probable cause is improper. The rationale for the detention, however, is not material: it is equally improper to hold a person without a prompt determination of probable cause when the responsible officials have no ulterior motives for the detention. In other words, a defendant's right

under *Gerstein* to a prompt determination of probable cause does not vary with the good faith or bad faith of the arresting and holding officers.

In the same vein, it is irrelevant in this particular case that plaintiff has not demonstrated that a judicial officer was actually available over the fourth of July weekend to make a determination of probable cause. Plaintiff satisfies his burden of proof once he shows that he was detained for longer than the period of time allowable under *Gerstein*. If a person is arrested during the evening, such period of time would generally include not only the time required to take the administrative steps incident to arrest but also the time needed to have a magistrate or other judicial officer make a determination of probable cause. If this case presented a close question of whether defendants had violated plaintiff's fourth amendment rights, *e.g.*, if the period of detention had been approximately twenty-four (24) hours, then the Court may consider the question of whether a judicial officer was actually available to make a determination of probable cause to be part of plaintiff's burden of proof.

The violation in this case is too clear, however. Defendants are constitutionally obligated to ensure that a judicial officer is available to make a probable cause determination within the requisite period of time. A person's fourth amendment rights are no less extant and binding on defendants on a fourth of July weekend than any other time of the year. "[T]he availability of the necessary judicial officers is an unresolved issue," Defendants' Brief at 5, but in this case it is not a material issue. Even the court in the case on which defendants rely most heavily, *Sanders*, held that persons arrested without a warrant "must be brought before a judicial officer ... not later than twenty-four (24) hours after the arrest" and stated that its holding would "apply ... on a weekend or holiday" as well as during the week. *Sanders*, 543 F.Supp. at 702.

■ Defendants also argue that "[w]hether the plaintiff's detention constituted an unreasonable delay is a question for the fact-finder to determine after considering all of the circumstances." Defendants' Brief at 5. Defendants misconstrue the nature of the right plaintiff enjoys under *Gerstein*. The Supreme Court in *Gerstein* sharply limited the "balancing", "consideration of all the circumstances", or determination of "reasonableness" a court or finder-of-fact should engage in such cases when it stated that the existence of probable cause justifies only the arrest and "a brief period of detention to take the administrative steps incident to arrest." *Gerstein*, 420 U.S. at 113–14, 95 S.Ct. at 863. "Once the suspect is in custody ... the reasons that justify dispensing with the magistrate's neutral judgment evaporate." *Id.* at 114, 95 S.Ct. at 863. The onus is then on the arresting and holding officers to ensure that the suspect receives a prompt determination of probable cause.

■ The only determination of reasonableness that may be required is whether such officers took a "reasonable" amount of time in completing the requisite administrative steps and securing a probable cause determination from a judicial officer. In that limited context, there may be a question of fact for the finder-of-fact to resolve. In this case, however, as I stated previously, plaintiff's length of detention was clearly unreasonable and violated his rights under *Gerstein* as a matter of law. *See Llaguno v. Mingey*, 763 F.2d 1560, 1567–68 (7th Cir.1985) (en banc). The availability of a judicial officer to make a determination of probable cause may be a factor, particularly in a small town/rural area such as that covered by the eighth judicial district, for a court to consider in determining whether a suspect was held for longer than the time required to complete the requisite administrative steps and to locate a judicial officer. There is an outside limit, however, to the length of time a suspect can be held without a probable cause determination that defendants in this case surpassed. The Court will also note for the convenience of interested readers that the Su-

preme Court also discussed in *Gerstein* the procedures a state should follow in making the requisite determination of probable cause. *Gerstein,* 420 U.S. at 119–26, 95 S.Ct. at 865–69.

The Court must now determine whether defendants can be held liable for this violation of plaintiff's constitutional rights. I will first discuss the potential liability of the County of Kalamazoo. With respect to the County, the governing standard is whether the injury plaintiff suffered resulted from "execution of a [county] policy or custom, whether made by its lawmakers or by those who edicts or acts may fairly be said to represent official policy." For the County to be held liable, the Court must find that plaintiff was unlawfully detained pursuant either to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by" the County's officers or to a County "custom". *Monell v. New York City Department of Social Services,* 436 U.S. 658, 690–91 & 694, 98 S.Ct. 2018, 2035–36 & 2037 (1978). Plaintiff thus must demonstrate that his unlawful detention was the result of a policy decision or custom not to have a magistrate available on the 1983 fourth of July weekend.

■ Although it is difficult for the Court to conceive of how the constitutional injury plaintiff suffered could have been anything but the result of a policy decision or custom, plaintiff has not provided the requisite support for the Court to so rule on this motion for summary judgment. Provided plaintiff does provide such support, either at trial or on a motion for summary judgment, the Court believes that the County would be liable. The County argues that it should not be held liable for the actions of the prosecutor, the sheriff department, and the district court since those governmental bodies operate independently and are not subject to the County's control. The Court finds, however, that the actions of these bodies can "fairly be said to represent official policy" of the County, making the County liable for their constitutional misdeeds in this case.

With respect in particular to the district courts, Michigan law establishes a peculiar situation where such courts are under the control of both the County and the judicial branch. The County is responsible for the operation, financing, and maintenance of the district courts. *See* M.C.L. §§ 600.-8103, .8104, .8117, & .8501. The courts, however, also are subject to the control of the state supreme court. M.C.L. § 600.-8101. The County, or other "district control unit," thus has responsibility for the courts in some areas but not in others. *See generally Judges of the 74th Judicial District v. Bay County,* 385 Mich. 710, 190 N.W.2d 219 (1971); *Kain v. State of Michigan,* 109 Mich.App. 290, 311 N.W.2d 351 (1981). In many respects the relationship between the district courts and the County in this case is similar to the relationship between the Sheriff Department and the County. In *Marchese v. Lucas,* 758 F.2d 181, 188–89 (6th Cir.1985), *petition for cert. filed,* 54 U.S.L.W. 3153 (U.S. Aug. 29, 1985), the Sixth Circuit found that a County could be held liable for actions that constituted the official policy of the Sheriff Department. Similarly, in this case the County can be held liable for actions that constitute the policy or custom of the district courts. The County may not be the only party that could or should be held liable for the injury plaintiff suffered, but it is a proper party.

■ The issues regarding the liability of defendant Dunithan are two-fold. The first is whether defendant Dunithan can be said to have "caused" plaintiff's constitutional injury. The second issue is if defendant Dunithan did cause such injury, whether he can claim the benefit of qualified immunity from monetary relief. Defendant Dunithan argues that although he initiated plaintiff's confinement, he did not cause plaintiff's continued confinement because he had no authority under Michigan law to take action to release plaintiff or to secure a probable cause determination from a judicial officer. He thus did not "cause" the unconstitutional delay between arrest and a determination of probable cause by a judicial officer. Under Michi-

 

gan law, however, defendant Dunithan was responsible for taking plaintiff "without unnecessary delay" before a magistrate. M.C.L. § 764.13. He thus cannot wash his hands completely of responsibility for plaintiff's unconstitutional confinement. As with the County, however, there are unresolved questions of material fact, specifically whether and to what extent defendant Dunithan retained control over the plaintiff after the arrest, that preclude a grant of summary judgment at this time for either party. *See Lambert v. McFarland,* 612 F.Supp. 1252, 1262 (N.D.Ga. 1985).

▪ The Court does find that defendant Dunithan cannot claim the benefit of qualified immunity. Defendant Dunithan would be immune from civil damages, even if he "caused" plaintiff's constitutional deprivation, if his conduct did not "violate [a] clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Although defendant makes a cogent argument to the contrary, I believe that his conduct did violate "clearly established law" and that he has not shown that he "neither knew nor should have known of the relevant legal standard." *Id.* at 818–19, 102 S.Ct. at 2738. *Gerstein* was decided in 1975 and the principle that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest" thus was clearly established law by the time of plaintiff's detention in 1983. *Gerstein,* 420 U.S. at 114, 95 S.Ct. at 863.

Defendant argues that though this principle was clearly established, he could not have been expected to know that detention for more than one or two days would violate *Gerstein* since most of the cases holding such were decided only shortly before the incident in this case occurred. Plaintiff's detention in this case, however, far exceeded the 24 hours the courts cited previously in this opinion found unconstitutional, and *Gerstein* itself states that once "the administrative steps incident to arrest" are completed, the State's justification for hold-

ing a suspect without a determination of probable cause evaporates and it must make such a determination. *Id.* The fact that other Michigan officials, such as the prosecutor and district court officials, apparently were unaware of *Gerstein* is a factor the Court must consider in determining defendant's qualified immunity defense, but it is not determinative. *Gerstein* was decided too long ago and the violation in this case was too egregious for the Court to find that defendant Dunithan is entitled to claim the benefit of the doctrine of qualified immunity.

In summary, the Court finds that plaintiff's detention for 60 plus hours over the 1983 fourth of July weekend without a judicial determination of probable cause violated his rights under the fourth amendment, as interpreted by the Supreme Court in *Gerstein v. Pugh.* I also find, however, that I cannot rule as a matter of law on the basis of the undisputed facts before me that either defendant County of Kalamazoo or defendant Dunithan should be held liable for this violation. The Court thus will not grant plaintiff summary judgment at this time. I will enter an order in accordance with this opinion. The Court also notes that this written opinion is intended to memorialize and to supplant the bench opinion rendered at the hearing held on December 23, 1985.