THE PEOPLE OF THE STATE OF NEW YORK ex rel. MICHELE MAXIAN, on Behalf of DAMON ROUNDTREE, et al., Respondents, v LEE BROWN, as Commissioner of the New York City Police Department, et al., Appellants.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. MARTIN MURPHY, on Behalf of JAMES LOVELLS, et al., Respondents, v LEE BROWN, as Commissioner of the New York City Police Department, et al., Appellants.

First Department, October 30, 1990

*Fay Leoussis* of counsel *(Leonard Koerner, Francis F. Caputo* and *Stephen J. McGrath* with her on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for appellants.

*Michele Maxian* of counsel *(Susan L. Hendricks* and *Ivar Goldart* with her on the brief; *Robert M. Baum,* attorney), for respondents.

*Henry J. Steinglass (Ursula Bentele* with him on the brief), for New York Criminal Bar Association and others, *amici curiae.*

### OPINION OF THE COURT

MURPHY, P. J.

■ Petitioners in these consolidated habeas corpus proceedings are persons arrested without warrants and thereafter detained by the police for varying periods while awaiting arraignment. Petitioners have challenged the legality of their prearraignment detention arguing, in reliance upon certain State statutory and constitutional provisions, that their detention was impermissibly prolonged. It is not disputed that among the petitioners are numerous persons held by the police in prearraignment custody for more than 24 hours and that, of these, some were detained in excess of 72 hours, and a few for more than 90 hours. While all of the petitioners had been either arraigned or released as of the argument of this appeal, the within proceedings raise important issues as to the limitations imposed by State law upon prearraignment detention. As these are novel issues, classically " 'capable of repetition, yet evading review' " *(Gerstein v Pugh,* 420 US 103, 110, n 11) due to the temporary nature of the challenged detention, appellate consideration is not foreclosed by the mootness doctrine *(Williams v Ward,* 845 F2d 374, 380, n 6).

CPL 140.20 provides in relevant part: "1. Upon arresting a

person without a warrant, a police officer, after performing *without unnecessary delay* all recording, fingerprinting and other preliminary police duties required in the particular case, must except as otherwise provided in this section, *without unnecessary delay* bring the arrested person or cause him to be brought before a local criminal court and file therewith an appropriate accusatory instrument charging him with the offense or offenses in question." (Emphasis added.)

In *People ex rel. Maxian (Roundtree) v Brown,* the first of the two decisions presented for our review, Justice Soloff, in a thorough and well-reasoned opinion, held that in applying the above-quoted provision it would be presumed that an arraignment delayed for more than 24 hours was "unnecessarily delayed" within the meaning of the statute. Justice Soloff was careful to explain that the presumption, once raised in the context of a habeas corpus proceeding, would be rebuttable, but only upon a showing by the respondent that there was an acceptable explanation for the delay. Failing such an explanation, the petitioner was entitled to be released. Justice Soloff's holding in *Roundtree* was subsequently followed by Justice McQuillan in *People ex rel. Murphy (Lovells) v Brown,* the second of the decisions here to be reviewed.

Respondents-appellants take issue with Justice Soloff's construction of CPL 140.20 (1). Finding no mention of any 24-hour limitation on prearraignment detention within the statute, they claim that Justice Soloff essentially rewrote the statute to impose a rigid limitation where none had been prescribed by the Legislature.

■ While we agree with respondents that the Legislature did not mandate in CPL 140.20 (1) that arraignments take place within any unvarying interval following a warrantless arrest, we think it clear that Justice Soloff did not do so either. Nothing in *Roundtree* may be fairly read to impose an inflexible time limit on prearraignment detention. All that was done in *Roundtree* was to establish a means for arrestees to vindicate their unarguable right to be arraigned without unnecessary delay. Clearly, so long as a presumption of regularity attends prearraignment detention it will be, practically speaking, impossible for arrestees to challenge their detention as unnecessarily prolonged. An arrestee cannot be expected to know why his arraignment has been delayed, yet such knowledge is obviously indispensable to litigating the question of whether the delay was necessary. Until he is entitled to demand an explanation from the only party in a position to

know the reason for the delay, namely his custodian, he will be unable to argue that the delay was unnecessary. It seems plain then that if CPL 140.20 (1) is to confer any enforceable benefit on those held pending arraignment, there must be a point at which the presumption of regularity gives way and the arrestee may, therefore, require his custodian to come forward with an explanation for the delay in arraignment. Indeed, unless we wish to entertain the suggestion that CPL 140.20 (1) is nothing more than a hortatory flourish, there does not appear to be any question that there must come a time at which prearraignment delay is presumed to be unnecessary. The more difficult question is when this presumption may be said to arise.

As we understand it, it is the respondents' position that no presumption of irregularity ought to attach to their actions as custodians of those awaiting arraignment until 72 hours have passed. In support of this position, respondents rely heavily upon the decision of the Second Circuit Court of Appeals in *Williams v Ward* (845 F2d 374, *cert denied* 488 US 1020, *supra*). The *Williams* court held that in New York City it would be permissible to delay the determination of probable cause required by the Fourth Amendment until an arraignment held as long as 72 hours after a warrantless arrest.

While *Williams v Ward (supra)* doubtless settles the question of what constitutes the maximum period of postarrest detention which may be permitted in this jurisdiction in advance of a probable cause determination, it is notably silent upon the issue fundamentally posed by CPL 140.20 (1), namely, the point at which it can be said that an arraignment has been unnecessarily delayed. It is, of course, true that the time reasonably necessary to arraign an arrestee will vary. As pointed out, however, the utility of CPL 140.20 (1) as a meaningful limitation on prearraignment detention requires that there be some generally recognized point beyond which prearraignment detention is presumptively unnecessary, a point at which the detainee may, without more, hail his custodians into court and require that the reasons for his continued detention without arraignment be set on the record and evaluated.

The inquiry as to the time reasonably necessary to bring an arrestee to arraignment would seem, in the first instance, to be one of a factual sort. This is to say that we would seek to

know by empirical investigation the actual time within which the administrative steps precedent to arraignment could be achieved within our jurisdiction by a reasonably diligent and efficient custodial authority. The court's determination in *Williams v Ward (supra)* did not rest on such an inquiry. Indeed, the findings made by the District Court in *Williams,*[1] although presented as findings of fact respecting the time needed to prepare for arraignment, were characterized by the Circuit Court as conclusions of law *(Williams v Ward, supra,* at 382) and thereafter rejected as legally unsound. In the end, no findings were made as to the length of time reasonably needed to bring an arrestee for arraignment. Rather, the Circuit Court's position seems to have been that, regardless of the amount of time actually necessary to perform the steps precedent to arraignment, it had already been decided, as a matter of law, that it was constitutionally permissible to hold an arrestee for 72 hours before determining at arraignment whether his arrest was supported by probable cause. In support of this position, the Circuit Court observed that the Supreme Court in *Gerstein v Pugh* (420 US 103, *supra)* had cited with approval the ALI Draft Model Code of Prearraignment Procedure which, at least in the Circuit Court's view, did not absolutely require arraignment until 72 hours after arrest. The Circuit Court also relied on the Supreme Court's decision in *Schall v Martin* (467 US 253). There, the Supreme Court upheld as constitutional provisions of the New York Family Court Act which the Circuit Court thought sanctioned the detention of juveniles for up to 72 hours before probable cause for their arrest had to be established. The Circuit Court stated, *"Schall's* acceptance of up to a seventy-two-hour period between an initial appearance and a probable-cause hearing under the Family Court Act reinforces, if not compels, our conclusion that prearraignment detention of seventy-two hours is constitutionally permissible in the instant case" *(Williams v Ward, supra,* at 388).

Whatever our reservations about the Second Circuit's read-

---

1. The District Court found, based on the parties stipulated statement of facts that completion of the administrative steps incident to arrest should take no more than 6 or 7 hours and that the time necessary to prepare for arraignment could take up to 17 hours. The court specifically stated that "a period of 24 hours is sufficient for all steps incident to an arrest to be finalized and all steps necessary for the New York arraignment under present procedures" *(Williams v Ward,* 671 F Supp 225, 226, *revd* 845 F2d 374).

ing of *Gerstein* and *Schall (supra)*,[2] the relevant point in the context of the present discussion, is that *Williams (supra)* was decided solely upon the precedential significance the court attributed to those decisions and not upon any inquiry as to the actual necessity of a 72-hour interval between arrest and arraignment. Apart from general observations made by the court to the effect that New York City is plagued by both abundant traffic and abundant crime, there is nothing in the opinion which even begins to explain why it should be necessary in this jurisdiction to take 72 hours to bring an arrestee to arraignment.

■ By contrast, as we have noted, the application of CPL 140.20 (1) is intimately concerned with the question of necessity. The statute's evident purpose is not to define the "absolute temporal limits" *(Williams v Ward,* 845 F2d, *supra,* at 382) placed on an arrestee's detention before a probable cause determination, but rather to assure that prearraignment detention is not prolonged beyond the time reasonably necessary to accomplish the administrative prerequisites to arraignment. That the constitutional inquiry and the inquiry necessitated by CPL 140.20 (1) should have become so divergent is indeed odd, for we would have thought that the "absolute temporal limit" for the detention of someone as to whom there had been no finding of probable cause much less guilt, would not be constitutionally permitted to exceed the time reasonably necessary to complete the administrative steps incident to the arraignment at which probable cause was to be tested. The court in *Gerstein v Pugh* had, after all, explained, "[A] policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while

2. Cogent criticisms of the Second Circuit majority's reading of *Gerstein* and *Schall* may be found in the dissenting opinion of Judge Stewart (845 F2d, at 392-396), in the opinion of Justice Soloff here reviewed and in commentary *(see,* Brandes, *Post-Arrest Detention and the Fourth Amendment: Refining the Standard of Gerstein v. Pugh,* 22 Colum JL & Soc Probs 445, 466-474 [1989]; Comment, *Williams v. Ward, Compromising the Constitutional Right to Prompt Determination of Probable Cause Upon Arrest,* 74 Minn L Rev 196).

the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly" (420 US, *supra,* at 113-114). Until *Williams,* nearly every court that had considered the issue had understood this language from *Gerstein* to entail, if not equivalence, at the very least a close correspondence between the time reasonably necessary to bring a suspect before a neutral Magistrate for a probable cause determination and the constitutionally permissible "outer limit" *(see, e.g., Gramenos v Jewel Cos.,* 797 F2d 432, *cert denied* 481 US 1028; *Bernard v City of Palo Alto,* 699 F2d 1023; *Doulin v City of Chicago,* 662 F Supp 318, *revd on other grounds* 868 F2d 959; *Mabry v County of Kalamazoo,* 626 F Supp 912; *Sanders v City of Houston,* 543 F Supp 694, *affd* 741 F2d 1379; *Lively v Cullinane,* 451 F Supp 1000; *Dommer v Hatcher,* 427 F Supp 1040, *revd in part on other grounds sub nom. Dommer v Crawford,* 653 F2d 289; *see also, McLaughlin v County of Riverside,* 888 F2d 1276). It had been understood that the unreviewed detention of a presumptively innocent person should not be permitted to endure beyond what was needed to accomplish the State's legitimate, but very limited, administrative purpose; in short, that the detention should not be permitted to outlive its justification. After *Williams,* however, the possibility exists that a constitutional outer limit, grounded not in fact but tenuously inferred from precedent, will bear no necessary relation to the time needed to bring a suspect for arraignment and that it may exceed it by far.

In this context, we think it critically important to stress that the "absolute temporal limit" imposed by the Constitution is not a license to extend prearraignment detention unnecessarily. Indeed, regardless of what is maximally allowable under the Constitution, the clear import of CPL 140.20 (1) is that every reasonable effort must be made to keep the period of prearraignment detention to the minimum necessary.

In construing the obligation imposed by CPL 140.20 (1) so strictly, we recognize that the deprivation entailed by prearraignment detention is very great with the potential to cause serious and lasting personal and economic harm to the detainee. We recognize also that this deprivation is one as to which no predicate is established in advance and, indeed, which may ultimately be found to have been unwarranted. It is, moreover, a deprivation frequently more severe than would be exacted from a defendant whose guilt had been proven.

Sadly illustrative of this are the facts set forth in numerous of the matters before us. One petitioner, Sei Boo, arrested for peddling an umbrella without a license was detained for 94.5 hours before being arraigned. Another, Carla Arnad, arrested for shoplifting, was held for 98 hours and 20 minutes before she was finally arraigned. Yet another petitioner, Gordon Armstrong, arrested for driving with a suspended license, a violation, was detained 69 hours before being arraigned. While extreme, these are not isolated cases.

Extended deprivations of liberty, unilaterally imposed and bearing no conceivably just relation to any crime which might be charged, would be profoundly troubling under any circumstances; they are, however, unconscionable under the circumstances of prearraignment detention which are notoriously harsh. Abruptly severed from all that is familiar and sustaining in the world they are used to travel, detainees are consigned, often in chains, to chronically overcrowded and squalid holding facilities where they will likely be subjected to extraordinary physical and emotional strain. They are, in such degrading, demoralizing and altogether intolerable circumstances, uniquely vulnerable to pressures which may compromise not only their personal integrity but their legal defense. The questionable validity of confessions obtained after prolonged prearraignment detention is, of course, a recurrent subject of judicial concern (see, e.g., People v Lovello, 1 NY2d 436, 438; People v Holland, 48 NY2d 861; People v De Jesus, 63 AD2d 148, 152; People v Jones, 87 AD2d 761).

When the State is allowed to retain, past the point of necessity, an advantage as overwhelming and potentially coercive as that which it holds over the individual during prearraignment detention, the most serious and irreversible damage may be done both to the individual and to the capacity of the courts to do justice. Arraignment then, may not be prepared for at leisure. It must be afforded, as the statute commands, "without unnecessary delay". In applying this standard, we must assume that the custodial authority possesses adequate resources and that it is prepared to discharge the administrative tasks incident to arraignment in a reasonably efficient way. Were we to assume otherwise, the statute would be deprived of all force and effect since the extent of the delay would then be permitted to vary inversely with the government's commitment of resources. Obviously, the purpose of the statute was not to sanction delay, but to limit it in view of the overriding and urgent importance of a prompt

arraignment to the arrestee and to the administration of justice. We conclude then that delay is not necessary within the meaning of the statute unless it is delay which could not have been reasonably foreseen and either reduced or eliminated. Clearly, there is nothing necessary about delays resulting from the long-standing failure of government to take reasonable remedial measures, including, of course, the allocation of resources adequate to the efficient discharge of its prearraignment responsibilities. We do not say what the government must do, only that if it is not to run afoul of CPL 140.20 (1) it must do all it is reasonably capable of to expedite the processing of arrestees for arraignment.

At what point then may it be presumed that the considerable obligation imposed by CPL 140.20 (1) has not been met?

After an arrest, the custodial authority is, of course, initially entitled to a presumption that it is acting in accordance with CPL 140.20 (1)—that it is moving the suspect through the steps leading to arraignment without unnecessary delay. This presumption, however, is not eternal. It fades and it fades rapidly, for, as the court in *Gerstein* observed, once the suspect is in custody the reasons justifying the State's summary action subside while "the suspect's need for a neutral determination of probable cause increases significantly." *(Gerstein v Pugh,* 420 US, *supra,* at 114.) Indeed, once the suspect is in custody, continued detention in advance of the probable cause determination or, as here, of the arraignment at which the probable cause determination is to be made, is justified only by the custodial authority's need of a "brief period" *(supra,* at 114) to complete the administrative steps incident to arrest or arraignment. Although the length of that "brief period" has been permitted, under the authority of *Williams,* to balloon to 72 hours, CPL 140.20 (1) requires that it, nevertheless, be limited to the time necessary to bring a suspect to arraignment. Accordingly, under the law of this State, the presumption in favor of the custodian can last no longer than the period reasonably necessary to produce an arrestee for arraignment.

After carefully reviewing the extensive record before her,[3] Justice Soloff observed:

"In *Williams v. Ward,* based on facts which are now be-

---

3. The record in *Roundtree* includes documentation pertinent to the habeas corpus petitions of some 9,000 persons arrested without warrants between January 13 and April 20, 1990.

tween three and five years old, it was agreed that the 'initial' eleven to fifteen hours after a warrantless arrest are consumed by police functions 845 F2d at 376. *The facts which can be derived from the petitions and returns filed on behalf of petitioners in this case do not show a substantially different general pattern although there are exceptions.*

*"The 'totality of the processes', at least of those which can be identified and timed, can usually be completed in 24 hours with time to spare"* (emphasis added).

█ We do not hesitate to characterize these findings as factual and to affirm them as such. We agree with Justice Soloff that close examination of the numerous petitions and returns in the *Roundtree* proceeding, discloses no reason why the prearraignment process cannot be completed within 24 hours. It is, in fact the case, that the administrative steps incident to arraignment are often completed well within 24 hours, only to have the arraignment inexplicably delayed for many hours, and sometimes days, beyond the point of administrative readiness. Damon Roundtree, for example, was held an additional 41.5 hours beyond the point of readiness until he was finally arraigned; Michael Cardwell, an additional 42 hours; Kitt Hamilton, an additional 12 hours; Billy Jackson, an additional 20.5 hours; Donald Thomas, an additional 18 hours; Nat Howard, an additional 11 hours; Harold Fernandez, an additional 21 hours; David Daye, an additional 55 hours; Edwin Colon, an additional 58.5 hours; Ernesto Vega, an additional 61 hours; Carla Anad, an additional 72 hours; Jerome McKineny, an additional 70.5 hours; and Jose Morales, an additional 64.5 hours. All of these petitioners were administratively ready for arraignment within 24 hours, and most with considerable time to spare. Less numerous, were the instances of prereadiness delay, but to the extent that these delays occurred, they were, like the postreadiness delays, left largely unexplained, or given explanations requiring close scrutiny. They cannot, then, be taken as indicative of a general need for more time to prepare for arraignment.

Presumptions properly lie "to achieve procedural expediency and convenience, or to reach a determination that accords with probability, or a socially desirable result * * * [or to] compel the party having superior knowledge of the facts to come forward with the evidence." (Fisch, New York Evidence § 1121, at 627 [2d ed].) In light of what has been said, it should be evident that all of these objectives are well served by the presumption that the delay of an arraignment beyond 24

hours is unnecessary. Factually, it appears probable that delay in excess of 24 hours is unnecessary and socially, the desirability of a prompt arraignment is unarguable. In addition, as has already been noted, the utility of the statute depends on the existence of such a presumption.

We have stated generally, that delays which are both reasonably foreseeable and avoidable are not necessary within the meaning of the statute, but we will not and, indeed, do not think it would be appropriate to attempt to catalogue the precise circumstances which fall within that category. Nor, conversely do we think it would be appropriate to attempt to detail those specific unanticipated and unavoidable circumstances which might warrant the judicial extension of the 24-hour presumptive limit for a further definite period. Suffice it to say, that the presumption is a strong one and that a showing which would cause it to yield will not be permitted to consist of a generalized appeal to judicial sympathy for municipal woes. At issue is the fundamental right of citizens to be free from unwarranted deprivations of liberty, and the ability of courts to assure that such deprivations do not occur. Indeed, if the judicial system is not to become increasingly irrelevant to the determination of guilt and punishment every effort must be made to assure that the suspect's transfer to the court's custody at arraignment is not unnecessarily delayed. The statute must be strictly enforced, even if the expense is high. The supposition, however, that prompt arraignment will inevitably be more costly than the toleration of long and unnecessary delay deserves the closest scrutiny, for it would seem that the costs associated with a bloated prearraignment system, containing many more people than necessary, would be much higher than one which moved its charges toward arraignment without unnecessary delay.

Finally, we note that, since we have reached the result which the petitioners seek on the basis of the State statute alone, it is not necessary to reach the question of whether the same result would also be compelled by the New York State Constitution. Thus, to the extent that the decision dictated from the Bench by Justice McQuillan in *Lovells* purports to rest on the State Constitution, we express no opinion as to its validity. We affirm its result entirely on the basis of what we understand to be required by CPL 140.20 (1).

Accordingly, the judgment of the Supreme Court, New York County (Brenda Soloff, J.), entered on or about April 20, 1990 which granted certain habeas corpus petitions to the extent of

holding that a delay of arraignment of more than 24 hours is presumptively unnecessary and, unless explained, constitutes a violation of CPL 140.20 (1) requiring the petitioner's release; and the judgment of the Supreme Court, New York County (Peter McQuillan, J.), entered on or about May 4, 1990, which granted habeas corpus relief on the same ground, should be affirmed, without costs or disbursements.

KASSAL, ELLERIN, SMITH and RUBIN, JJ., concur.

Judgment, Supreme Court, New York County, entered on April 20, 1990, and judgment of said court, entered on or about May 4, 1990, unanimously affirmed, without costs and without disbursements.