OPINION OF THE COURT
Lee H. Elkins, J.
This decision follows[1] the release of the two juvenile respondents from custody, despite a motion for their continued detention pursuant to Family Court Act § 307.4 (4) (c), after the court held a pre-petition hearing and determined that the court had jurisdiction to detain the respondents pending a petition being filed.
Findings of Fact
The facts are not in dispute.[2] On Sunday, August 7, 2011 at about 7:00 p.m., uniformed police officers took both 13-year-old respondents into custody in connection with an alleged robbery occurring on the same date. Apparently, respondent D was identified in a showup and arrested by the uniformed officers before being transported to the 94th Precinct. The basis for the detention of respondent V is less clear, although he also may have been under arrest. Both respondents were detained at the 94th Precinct for over 24 hours until the evening of August 8, when they were taken to the Horizons detention center, from which the respondents were brought to the Kings County Family Court on the morning of Tuesday, August 9, 2011. Altogether the respondents were in custody for about 38 hours before being produced in court. These facts came to light in a pre-petition hearing held under Family Court Act § 307.4 on the morning of August 9.
*429 While in detention at the 94th Precinct on Sunday night, the respondents were placed in lineups arranged by detectives in connection with an investigation into events occurring on Saturday, August 6, unrelated to the event that lead to their detention by the uniformed officers on August 7. Specifically, Detective Andrew Bielawski testified that the respondents were detained at about 7:00 p.m. on August 7 by the uniformed police officers in regard to an alleged robbery. The uniformed officers brought the respondents to the 94th Precinct. The detective understood that D was under arrest, although he was not certain about V The uniformed officers notified the respondents’ parents, who appeared at the precinct sometime around 8:00 p.m. on August 7. Detective Bielawski suspected that the respondents may have been involved in two additional crimes on August 6. Apparently Detective Bielawski questioned both respondents in the presence of their parents in relation to the August 6 crimes, and D made a statement at about 8:35 p.m. on August 7. Detective Bielawski arranged for both respondents to be placed in lineups at about 12:45 a.m. on August 8 with regard to one of the August 6 crimes. The result of those lineups is unclear. The detective decided to conduct a second lineup with regard to the second August 6 crime, later in the day on August 8.
The detective testified that he contacted someone whose name he did not record, at the Kings County Family Court[3] at 8:30 a.m. on Monday, August 8, to say that he had a juvenile ready for court, referring to V The detective informed the speaker that the juvenile acted in concert with a second juvenile who was being detained for a lineup. According to the detective, the speaker told him to wait until both juveniles were ready to be charged, but not to bring either of them unless both could be brought to court by 2:00 p.m.[4] Detective Bielawski testified that he was waiting for witnesses so as to conduct a lineup with D. That lineup occurred at 1:45 p.m. The detective arrested D at 2:00 p.m. on August 8 for the offense that ultimately became the subject of the pre-petition hearing held on August 9. Following the instruction he received on the telephone, the detective did not produce the respondents to court, but kept them at the *430 precinct. Sometime on the night of August 8, the police took the respondents to a detention facility from which they were produced in court in the morning of August 9.
The Law
Family Court Act § 305.2 governs the duties of the police upon the arrest of a “child,” which is to say a juvenile under the age of 16. That section states that an officer who takes a child into custody must immediately notify the child’s parent or guardian of the detention. The officer must either release the child to the custody of the parent or must “forthwith and with all reasonable speed take the child directly, and without his first being taken to the police station house, to the family court located in the county in which the act occasioning the taking into custody allegedly was committed.” (Family Ct Act § 305.2 [4] [b] [emphasis added].) If the family court is not then in session, the police are to take the child to a place certified by the Office of Children and Family Services as a juvenile detention facility for the reception of children. (Family Ct Act § 305.2 [4] [c].) Pursuant to Family Court Act § 307.3, the agency responsible for operating a detention facility may in turn, “[w]hen practicable” release the child to the parent or guardian before a petition is filed (Family Ct Act § 307.3 [2]) and issue an appearance ticket. If the child is not released by the detention agency, then the statute requires that the child “be brought before the appropriate family court within seventy-two hours or the next day the court is in session, whichever is sooner.” (Family Ct Act § 307.3 [4] [emphasis added].) The agency shall thereupon file an application for an order pursuant to Family Court Act § 307.4.
Significantly, these statutes ensure a child prompt access to counsel and to an independent judicial decision whether continued detention is in the best interest of the child and necessary to prevent further acts of delinquency. These statutes extend to children the right to appear before a judge directly to seek release from detention even before an accusatory instrument has been filed.[5] This statutory right precedes and is *431 distinct from the probable cause determination* ****[6] that follows an initial appearance on a juvenile delinquency petition.
Under these statutes a juvenile arrested by the police should be produced in the family court on the day of the arrest or not later than the next day. The statute presumes that if the child is not produced to court by the police on the day of the arrest, then the police will produce the child to a juvenile detention center operated by the Office of Children and Family Services for the reception of children. In brief, the statutes do not contemplate that a child will be held overnight in custody in a police precinct.
There is a limited exception to the obligation either to release children to their parents or to produce them directly to the family court or to a juvenile detention center. Family Court Act § 305.2 (4) (b) permits the arresting officer who “determines that it is necessary to question the child” to
“take the child to a facility designated by the chief administrator of the courts as a suitable place for thé questioning of children or, upon the consent of a parent or other person legally responsible for the care of the child, to the child’s residence and there question him for a reasonable period of time.”
Where the officer elects to take the child to a designated juvenile room in a police precinct for questioning, the detention must be limited to a “reasonable period of time.” (Family Ct Act § 305.2 [8].) Of course, the child’s parent or legal guardian must be notified and must be given the opportunity to be present during the questioning. (Family Ct Act § 305.2 [7]; see Matter of Jimmy D., 15 NY3d 417 [2010].) These statutes apply even though the child is arrested for a designated felony. (Family Ct Act § 305.2 [5].)
This exception is predicated upon a determination that such questioning is “necessary.” As previously noted, any questioning must be limited to a “reasonable period.” The terms “nec *432 essary” and “reasonable” are terms of limitation. The court does not assume that the Legislature used these terms as a “hortatory flourish.”[7] By using the word “necessary” the Legislature clearly intended that there be an investigative need to question the juvenile, not that the officer merely finds it useful to do so.
In People ex rel. Maxian v Brown (164 AD2d 56, 60 [1990], affd 77 NY2d 422 [1991] [Roundtree]) the Supreme Court interpreted CPL 140.20 (1) which requires a police officer to perform administrative duties preliminary to an arraignment and to bring such person before a local criminal court for arraignment without unnecessary delay. The Appellate Division observed that “the application of CPL 140.20 (1) is intimately concerned with the question of necessity.” (164 AD2d at 62.) The trial court found that 24 hours was generally adequate to permit the arresting officer to perform required administrative tasks prior to arraignment. The appellate courts affirmed, based upon the language of the statute. The Criminal Procedure Law expressly does not apply to family court matters (Family Ct Act § 303.1 [1]). “A court may, however, consider judicial interpretations of appropriate provisions of the criminal procedure law to the extent that such interpretations may assist the court in interpreting similar provisions of’ the Family Court Act. (Family Ct Act § 303.1 [2].) It is apparent that the two statutes, Family Court Act § 305.2 (4) (b) and CPL 140.20 (1) serve similar purposes relating to prearraignment detention and therefore should be read in pari materia. (McKinney’s Cons Laws of NY, Book 1, Statutes § 221.) The Court of Appeals in Roundtree found that the Criminal Procedure Law “requires that a prearraignment detention not be prolonged beyond a time reasonably necessary to accomplish the tasks required to bring an arrestee to arraignment.” (77 NY2d at 427.) Although the delay here was not simply administrative, the principle in Roundtree is that the arrestee is not to be detained beyond the period allowed to achieve any recognized statutory purpose.
Courts recognize that juveniles are not miniature adults (see e.g. J.D.B. v North Carolina, 564 US —, 131 S Ct 2394, 2403 [2011]; and see People v Mitchell, 2 NY3d 272, 275 [2004]), and are not to be treated as such during police investigations. (Id.) The Legislature expresses the same principle, by using the word “child” in these statutes. It follows that police procedures ap *433 propriate to adults may be inappropriate to children.[8] Although courts may allow extended detention of adults[9] where necessary to complete an investigation into suspected crimes (see e.g. People v Carbonaro, 21 NY2d 271 [1967]; People v Williams, 297 AD2d 325 [2d Dept 2002]) these statutes clearly specify a different standard where the suspect is a child. To summarize the statutory requirements: once a child is arrested the statutes direct the police either to release the child to a parent or to take the child to court or to a juvenile detention center operated to receive children. The statutes only permit a child to first be taken to the police station for questioning where “necessary.” Even then, in the alternative, the statutes provide that the questioning may occur in the child’s home in the presence of the parent or guardian. This is a further clear indication that the Legislature intended for the police even when questioning a child, to avoid detaining children at a police station. Where the police chose to question the child at a police station, the Legislature requires that the inherently coercive[10] atmosphere be ameliorated by questioning in a “facility designated by the chief administrator of the courts as a suitable place for the questioning of children” and by the presence of the child’s parent or guardian, and be limited to a “reasonable period of time.” (Family Ct Act § 305.2 [4] [b].) Consequently, this exception should not be read expansively to include prolonged investigative detention into crimes unrelated to the one for which the child is detained.* [11]
Here the respondents were arrested by uniformed officers at about 7:00 p.m. on August 7 for a crime which allegedly occurred at about the time of their arrest. Because it was a Sunday night they could not have been taken directly to the Family Court. In any event, they were taken to the precinct, their parents were notified and they were questioned by Detective *434 Bielawski in the presence of their parents within an hour. Instead of being taken to a juvenile detention facility after questioning, they were detained at the precinct to stand in a lineup at 12:45 a.m. on August 8. Even then they were not taken to a detention center, but continued to remain in the precinct until the detective called the Family Court at 8:30 a.m. on Monday morning. At that point 12 hours had elapsed since the respondents were questioned in the presence of their parents. Although the detective informed the person who answered his call that one juvenile was ready to be processed, he was advised[12] to wait until he was ready to bring both to court. Thereafter, the detective decided to continue to detain both of the 13 year olds in the precinct awaiting a second lineup unrelated to the respondents’ initial arrest. At this point in the court’s view, any statutory justification to continue to hold the respondents was exhausted. Nonetheless both respondents continued in police custody for another 12 hours or more until they finally were brought to a juvenile detention center on the night of August 8. They were not produced before a judge until the next morning, approximately 39 hours after their arrest. The court finds that this prolonged detention unrelated to their initial arrest or to any need to question them in regard to that arrest violated the plain language of the statutes.
The remaining issue to be resolved is whether the remedy for this violation is the release of the respondents. In Roundtree the Supreme Court established a presumption that persons arrested and held for 24 hours were entitled to arraignment or release. Similarly, this court has held that presumptive juveniles are to be produced in court immediately following their arrest, or at least as soon as any necessary questioning related to that arrest is concluded. As any statutory justification to detain these respondents was exhausted as of Monday morning August 8, they should have been produced before the court at that time. Insofar as they continued in detention for another 24 hours, they are entitled to release.

. The events recounted in this decision occurred in early August 2011. The court issues this decision in light of the importance of the interests involved and the likelihood that although recurring, similar events will evade judicial review.

. The basis for the court’s findings is the testimony of Detective Andrew Bielawski and the statements of the assigned assistant corporation counsel before this court on August 9, 2011. No one from the Family Court or from the Department of Probation testified and their version of the events is unknown.

. The corporation counsel contends, based upon the telephone number called by Detective Bielawski that the person contacted was an employee of the court’s probation department.

. The policy of the Kings County Family Court is not to accept newly arrested juveniles after 3:00 p.m., as they may not be processed for a pre-petition hearing before the court closes at 4:30 p.m.

. Although adults can be made to await the filing of an accusatory instrument, both children and adults share the interests articulated by the United States Supreme Court in Gerstein v Pugh (420 US 103, 113-114 [1975]):
“[A] policeman’s on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administra-' tive steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate’s *431 neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State’s reasons for taking summary action subside, the suspect’s need for a neutral determination of probable cause increases significantly.”

. Consequently, this statutory right is more immediate by design than the 72-hour probable cause determination contemplated in Schall v Martin (467 US 253 [1984]), which is separately enacted in Family Court Act § 325.1 (2) (where a juvenile is detained following an initial appearance, a probable cause hearing must be held within three days).

. (See People ex rel. Maxian v Brown, 164 AD2d 56, 60 [1st Dept 1990], affd 77 NY2d 422 [1991].)

. (See e.g. CPL 1.20 [42]; 140.20 [6] [police must notify parent of arrest and whereabouts of a juvenile offender]; and see People v Mitchell, 2 NY3d 272 [2004] [parent may invoke right to counsel on behalf of a child, whereas another person may not invoke the right to counsel for an adult suspect].)

. In evaluating the effects of detention upon any suspect under a totality of the circumstances test age is always an important consideration. (People v Townsend, 33 NY2d 37 [1973]; People v Bevilacqua, 45 NY2d 508 [1978]; People v Carbonaro, 21 NY2d 271 [1967].)

. (See J.D.B. v North Carolina, 564 US —, 131 S Ct 2394, 2401 [2011].)

. This is not to imply that juvenile suspects may not be placed into lineups (see e.g. People v Mitchell, 2 NY3d 272 [2004]) only that they must be produced before a judge without delay on the matter for which they are arrested.

. This advice was clearly wrong in the court’s opinion.